Robert BIRD, Nelson E. Brown, Ronald R. Creasman, Richard D. Dover, Frederick J. Dyson, Esther E. Gower, Della Jo Ann Henson, Ronald A. Mapes, Grace L. Molloy, Ray M. Mosesian, Steven H. Mussman, Lyman G. Nation, Sondra Padgett, Rebecca L. Perry, Jay T. Priest, Gary C. Rumsey, Patricia F. Stafford, Beverly R. Strutz, Edward J. Wassell, Tamara L. Williams, William E. Wimmer, Aharon W. Zorea, Appellants,

v.

### MUNICIPALITY OF ANCHORAGE, Appellee.

#### No. 1014.

Court of Appeals of Alaska.

Feb. 16, 1990.

---

Moshe Calberg Zorea, Anchorage, for appellants.

Elaine Vondrasek, Asst. Mun. Prosecutor, Jim Wolf, Mun. Prosecutor, and Richard D. Kibby, Mun. Atty., Anchorage, for appellee.

## OPINION

Before BRYNER, C.J., COATS, J., and FABE *, Superior Court Judge.

COATS, Judge.

Robert Bird and twenty-one co-defendants appeal from their convictions for trespass, in violation of Anchorage Municipal Code § 08.30.010(A).[1]

The facts underlying the convictions are not in dispute. On February 13, 1989, the appellants placed themselves in front of the doors of the Alaska Women's Health Services building. They were asked to leave the property by the director of the center. When the appellants refused to leave the property, they were arrested for trespass.

The appellants argue that the district court erred in excluding their proffered defense of necessity and in refusing to instruct the jury on the necessity defense.

The common law defense of necessity is available to criminal defendants in Alaska except where preempted or excluded by the legislature.[2] To establish the

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Anchorage Municipal Code § 08.30.010 provides in relevant part:
   A. It is unlawful for any person, firm or corporation to commit a trespass upon either public or private property without consent of the owner of the property.
   B. Without constituting any limitation upon the provisions of subsection A hereof, any of the following acts by any person, firm or corporation shall be deemed included among those that constitute trespasses in violation of the provisions of subsection A, and appropriate action may be taken hereunder at any time, or from time to time, to prevent or punish any violation or violations of this section.
   The aforesaid enumerated acts shall include:
   . . . .

   3. a failure or refusal to depart from the premises of another, including publicly owned property, upon request to do so orally or in writing by any owner or occupant thereof;
   . . . .

2. Alaska Statute 11.81.320 provides:
   *Justification: Necessity*
   (a) Conduct which would otherwise be an offense is justified by reason of necessity to the extent permitted by common law when
   (1) neither this title nor any other statute defining the offense provides exemptions or defenses dealing with the justification of necessity in the specific situation involved; and
   (2) a legislative intent to exclude the justification of necessity does not otherwise plainly appear.
   (b) The justification specified in (a) of this section is an affirmative defense.

necessity defense the defendant must show that:

(1) The act charged was done to prevent a significant evil;

(2) there was no adequate alternative;

(3) the harm caused was not disproportionate to the harm avoided.

*Cleveland v. Anchorage,* 631 P.2d 1073, 1078 (Alaska 1981) (citing *Nelson v. State,* 597 P.2d 977, 979 (Alaska 1979)). The defense is available "if the accused reasonably believed at the time of acting that the first and second elements were present, even if that belief is mistaken; but the accused's belief will not suffice for the third element. An objective determination must be made as to whether the defendant's value judgment was correct, given the facts as he reasonably perceived them." *Cleveland,* 631 P.2d at 1078.

■ In *Cleveland,* the supreme court ruled that the defense of necessity was not available to defendants charged with trespassing at an abortion clinic when the alleged necessity was the need to prevent abortions. The defendants in *Cleveland,* like the appellants here, claimed to have acted in the reasonable belief that their conduct was necessary to prevent an imminent threat to human life, *i.e.,* the abortions they believed were scheduled to be performed that day at the site of the trespass. The supreme court rejected the *Cleveland* appellants' argument on several grounds.

First, the court held that the necessity defense applies only where the alleged harm sought to be avoided arose either from the physical forces of nature or from unlawful human acts. *Cleveland,* 631 P.2d at 1078–79. Since abortion is not unlawful in this state, the necessity defense would not be available to those who break the law

in an effort to prevent abortions. *Id.* at 1079.

Second, adopting the reasoning of the Hawaii Supreme Court in *State v. Marley,* 54 Haw. 450, 509 P.2d 1095 (1973), the court rejected the appellants' claim to the necessity defense on two grounds: that there had been lawful alternatives available to the appellants, *i.e.,* non-criminal forms of protests; and that their actions were not reasonably designed to actually prevent the threatened greater harm. *Cleveland,* 631 P.2d at 1079. The court held that, as in the *Marley* case:

[I]t was obvious to the trespassers that their actions could not halt the alleged greater harm to which society had given its imprimatur, but rather that, at best, the harm could be only postponed for a brief interval, following which society's normal operations would reassert themselves. This was simply not the kind of emergency situation contemplated by the defense of necessity.

*Id.* at 1080.

Third, the *Cleveland* court held that the appellants had failed to show that the harm they sought to avoid was greater than the harm reasonably foreseeable from their actions. The court found that the harm to the Alaska Clinic from the disruption of its schedule, and the emotional distress that would be suffered by the clinic's patients as a result of the invasion of their privacy, were reasonably foreseeable to the trespassers. Against this harm, the court weighed the foreseeable results of the appellants' failure to intervene—the routine performance of abortions. In this balancing of harms, the court deferred to the Alaska Legislature which had enacted a statute regulating but not prohibiting abortion.[3] The court stated:

---

3. Alaska Statute 18.16.010 reads:

*Abortions.*

(a) An abortion may not be performed in this state unless

(1) the abortion is performed by a physician or surgeon licensed by the State Medical Board under AS 08.64.200;

(2) the abortion is performed in a hospital or other facility approved for the purpose by the Department of Health and Social Services

or a hospital operated by the federal government or an agency of the federal government;

(3) consent has been received from the parent or guardian of an unmarried woman less than 18 years of age; and

(4) the woman is domiciled or physically present in the state for 30 days before the abortion.

(b) Nothing in this section requires a hospital or person to participate in an abortion, nor

Alaska's legislature has, we think, already spoken as to the balancing before us, and concluded that the interests in potential life appellants sought to vindicate are outweighed by the very privacy interests appellants sought to invade. Thus, we cannot agree that any abortions that were delayed by appellants' demonstration can be characterized as sufficiently harmful to outweigh the harm that was the foreseeable result of appellants' behavior.

*Id.* at 1081 (footnote omitted).

The appellants here urge us to distinguish their case from *Cleveland.* They argue that unlike the trespassers in *Cleveland,* they were not engaged merely in a general protest of abortion. They contend that their purpose in trespassing at the center on February 13, 1988, was to prevent the specific abortions scheduled to be performed there on that date. The appellants fail to recognize that the court in *Cleveland* rejected an identical argument from the appellants in that case. The *Cleveland* court quoted this characterization of their actions from the appellants' brief:

It is vital to understand that these appellants, by their actions on January 6, 1978, were not protesting abortion in general, or engaging in symbolic acts which they hoped would lead the public to sympathize with the prolife cause. Rather, they were directly intervening to protect the particular human lives threatened with imminent destruction at Alaska Hospital and Clinic in the abortion chambers they entered, on that very day.

*Cleveland,* 631 P.2d at 1077. Noting that the appellants' protest "was, in fact, part of a nationwide protest that resulted in several similar arrests in other cities," the court decisively rejected the trespassers' characterization of their actions:

We think it manifest that it would be inappropriate to characterize these trespasses as anything other than a protest, and that appellants' argument of necessity must therefore be rejected.

*Id.* at 1080. We are aware of no significant differences between the trespass here and that in *Cleveland* which would cause us to depart from this holding.

The appellants also argue that the rule of *Cleveland* is undermined by subsequent decisions of this court recognizing the possibility that the necessity defense may be available to those who seek to avoid harm arising from human acts rather than natural causes.[4] None of these cases, however, are directly in conflict with the *Cleveland* holding that the harm sought to be avoided by a defendant raising the necessity defense must have emanated either from a natural cause or from illegal human acts. In no case has either this court or the Alaska Supreme Court approved the application of the necessity defense where the harm sought to be avoided was the lawful act of another person. Even if the application of the necessity defense were to be recognized in some such instances in future cases, this would not be fatal to *Cleveland.* The *Cleveland* ruling rests on numerous alternative bases, only one of which is the restriction of the necessity defense to situations caused either by the forces of nature or by unlawful human acts.

Finally, the appellants argue that the continued validity of the *Cleveland* decision is called into question by the United States Supreme Court's recent opinion in *Webster v. Reproductive Health Services,* — U.S. ——, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989). The appellants contend that the court in *Cleveland* "relied heavily on *Roe v. Wade*"[5] in determining that abor-

is a hospital or person liable for refusing to participate in an abortion under this section.

　(c) A person who knowingly violates a provision of this section, upon conviction, is punishable by a fine of not more than $1,000, or by imprisonment for not more than five years, or by both.

　(d) In this section, "abortion" means an operation or procedure to terminate the pregnancy of a nonviable fetus.

**4.** *See, e.g., Reeve v. State,* 764 P.2d 324 (Alaska App.1988); *Gerlach v. State,* 699 P.2d 358 (Alaska App.1985); *Wells v. State,* 687 P.2d 346 (Alaska App.1984).

**5.** 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

tion was not a "harm" for purposes of the necessity defense. They also contend that the Supreme Court in *Webster* substantially modified *Roe v. Wade*. Appellants argue that *Webster* "recognize[d] that abortion is the purposeful killing of life."

The appellants' reading of *Cleveland* is untenable. The court in *Cleveland* expressly relied not only on *Roe v. Wade*, but also on the enactment of AS 18.16.010 [6] in deciding whether abortion could be characterized as a harm for purposes of the necessity defense. The appellants in *Cleveland* had argued that *Roe v. Wade* was not determinative of the weight to be given to abortion as a competing harm with trespass. In response to this argument the court held:

> [E]ven assuming that appellants are correct in arguing that *Roe v. Wade* does not control as to the weight to be accorded "potential life" in this context, the United States Supreme Court is not the only authority to which we must defer in this area. The Alaska legislature is better suited to strike the balance than is this court.

*Cleveland*, 631 P.2d at 1080–81 (footnote omitted). The *Cleveland* opinion states the law of Alaska regarding the necessity defense. It is not affected by the United States Supreme Court's decision in *Webster*.

In summary, we are bound by the ruling of the Alaska Supreme Court that the necessity defense is not available to those who trespass at abortion clinics in an attempt to prevent abortions. *Cleveland* is directly on point here; we have been presented with no legitimate distinguishing factors.

The appellants' convictions are AFFIRMED.

SINGLETON, J., not participating.