**Dominic ALLEN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–8740.**

Court of Appeals of Alaska.

Nov. 18, 2005.

John P. Morrison, Assistant Public Defender, Kenai, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

Terisia K. Chleborad, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Dominic Allen appeals his convictions for driving with a suspended license and violating the conditions of his release (based on the same act of unlicensed driving). Allen con-

---

tends that his trial judge should have instructed the jury on his proposed defense of necessity. For the reasons explained here, we agree with Allen and we therefore conclude that he is entitled to a new trial.

*Underlying facts, and the trial judge's ruling on Allen's proposed defense of necessity*

On the evening of April 24, 2003, a state trooper pulled Allen over for driving with his headlights off. (Allen was driving with only his parking lights on.) Allen's mother, Sharon Allen, was a passenger in the car. The trooper determined that Allen's driver's license was suspended, and so he arrested Allen for driving with a suspended license.

At the time, Allen was on bail release from another criminal charge. Allen was later charged with violating the condition of his release that required him to obey all laws.

Before trial, Allen's attorney notified the State that he intended to assert the affirmative defense of necessity under AS 11.81.320. On the first day of trial, the State asked the trial judge to preclude Allen from discussing this proposed defense in front of the jury until Allen made an offer of proof demonstrating that there was some evidence to support the defense.

In response, Allen's attorney asserted that the defense was prepared to present the following evidence: On the evening in question, Allen's mother (Sharon Allen) had initially been driving the car, but she had to pull over because she began to suffer fatigue and double vision. Although Allen knew that he was not supposed to drive, he believed that his mother needed medical attention, so (with his mother now in the passenger seat) Allen started driving to Big John's Liquors, approximately one-half mile down the road, where there was a telephone. Shortly after Allen began driving, he was stopped by the state trooper.

Later in the trial, the defense attorney called Allen's mother to the stand (outside the presence of the jury) in support of the proposed necessity defense.

Sharon Allen testified that she picked her son up from a class that night. As she was driving to Sterling, Allen told her to pull the car over because she was weaving. Mrs. Allen stated that she was suffering from fatigue and double vision at the time, recurring symptoms that stemmed from her being doused with gasoline three years earlier. She testified that, after she pulled over, Allen took the wheel and drove to Big John's to use the telephone to "find a ride for [her]." Mrs. Allen further testified that, although her physical ailments were recurring, Allen had not previously seen her in this condition, and he was scared about her health.

Mrs. Allen admitted that, when the trooper stopped them, she did not ask the trooper for help in obtaining medical assistance, nor did she go to a hospital or call a doctor later that night. She explained that her symptoms were recurring, and that there was nothing to be done except wait for them to subside. She testified that she sometimes sleeps for a couple of hours until her symptoms go away.

During cross-examination by the prosecutor, Sharon Allen conceded that, during the time her son was driving to Big John's, they must have passed Good Time Charlie's, a strip club. Mrs. Allen further conceded that they did not stop at the strip club. She explained that the only telephone she knew about was at Big John's, that she was not a "bar person", and that she "wouldn't have considered going in [Good Time Charlie's]."

In addition to presenting this testimony, Allen's attorney also offered to prove that Allen believed that his mother needed medical attention, that he wanted to transport her to Big John's because that was the nearest place he knew of where there was a telephone, and that Allen believed there was no adequate alternative to his driving the car to Big John's.

When the trial judge, Magistrate David S. Landry, suggested that Allen might have walked the half-mile to Big John's, Allen interjected, "And leave my mother in the car? Is that what you would do, Your Honor?"

In response to Allen's offer of proof, the prosecutor offered to prove that Allen had driven for more than half a mile, and that he and his mother had passed up many opportunities to stop and use a telephone. The

prosecutor also emphasized that, when the trooper stopped Allen, Sharon Allen made no request for medical assistance.

After listening to these offers of proof and the parties' arguments, Magistrate Landry refused to instruct the jury on the defense of necessity, and he precluded Allen from presenting any evidence in support of this defense. Magistrate Landry concluded that Allen had an adequate, reasonable alternative to breaking the law: he could have walked to Good Time Charlie's (which was closer than Big John's) and used the telephone there.

*. Why we conclude that this ruling was error*

 To establish the defense of necessity, a defendant must show (1) that they committed the charged offense to prevent a significant evil, (2) that there was no adequate, reasonably available alternative to committing the offense, and (3) that the harm caused by the charged offense was not disproportionate to the harm the defendant avoided by breaking the law.[1] Moreover, if the offense is a continuing one (such as a driving offense), the defendant must show (4) that they stopped violating the law as soon as the necessity ended.[2]

Of the elements listed in the preceding paragraph, elements (1), (2), and (4) are judged from the perspective of a reasonable person in the defendant's position. Thus, the question is what the defendant reasonably believed at the time, even if it later turns out that the defendant's belief was partially or wholly mistaken.[3]

There is one *caveat*, however: to the extent that the debate over the "adequacy" of an available alternative really hinges on an assessment of the harm done versus the harm avoided, "adequacy" will be a question of law. This follows from the rule that, once the facts have been established, the third element of the necessity defense—the pro-

portionality of the harm done compared to the harm avoided—is a question of law to be decided by the judge. The judge must make "an objective determination ... as to whether the defendant's value judgment was correct, given the facts as [the defendant] reasonably perceived them."[4] This remains the rule even when the defendant attempts to reframe a proportionality argument as a claim that the available alternatives were not "adequate".

(For example, in *State v. Marley*, 54 Haw. 450, 509 P.2d 1095 (1973), the defendants were charged with criminal trespass after they entered and disrupted the offices of the Honeywell Corporation in an effort to stop that company's "war crimes" (*i.e.*, the company's contracts with the Department of Defense to manufacture anti-personnel weapons). The Hawai'i Supreme Court held that, as a matter of law, peaceful protest outside the company's offices was an adequate alternative method of dramatizing, and perhaps ultimately stopping, the company's activities. *Id.* at 1109.)

In Allen's case, the trial judge precluded him from presenting a necessity defense because the judge concluded that Allen had an adequate, reasonably available alternative to driving to Big John's Liquors—to wit, leaving his mother in the car and walking to Good Time Charlie's.

As just explained, the adequacy of available alternatives can sometimes be a question of law. But this is true only in cases where, even viewing the facts in the light most favorable to the defendant, the defendant knew or reasonably should have known of the availability and reasonableness of these alternatives.

Here, Allen asserted that he drove to Big John's Liquors because he knew that a telephone was available there. Moreover, Allen asserted that even if a telephone had been

1. *Cleveland v. Anchorage*, 631 P.2d 1073, 1078 (Alaska 1981).

2. *Reeve v. State*, 764 P.2d 324, 326 (Alaska App. 1988); *Gerlach v. State*, 699 P.2d 358, 362 (Alaska App.1985); *Wells v. State*, 687 P.2d 346, 350 (Alaska App.1984).

3. *Nelson v. State*, 597 P.2d 977, 979 (Alaska 1979); *Seibold v. State*, 959 P.2d 780, 782 (Alaska App.1998).

4. *Seibold v. State*, 959 P.2d 780, 782 (Alaska App.1998), quoting *Bird v. Anchorage*, 787 P.2d 119, 120–21 (Alaska App.1990).

available at Good Time Charlie's, it would have been unreasonable for Allen to walk to this telephone and leave his mother alone in the car when he reasonably believed that she was in need of speedy medical attention. Allen presented evidence (or an offer of proof) on these issues, and we conclude that this evidence created a jury question on both issues. That is, jurors who viewed this evidence in the light most favorable to Allen could properly find in Allen's favor on these issues. For this reason, it was error for the trial judge to refuse to instruct the jury on the defense of necessity.

### Conclusion

The judgement of the district court is RE-VERSED. Allen is entitled to a new trial.

STEWART, Judge, dissenting.

Alaska Statute 11.81.320(a) codifies the necessity defense in the criminal code "to the extent permitted by common law." In *Cleveland v. Anchorage,*[5] the Alaska Supreme Court described the necessity defense as having three elements: (1) the defendant's violation of the law must have been done to prevent a significant evil, (2) there must have been no adequate alternative method to prevent this evil, and (3) the harm caused by the defendant's violation of the law must not have been disproportionate to the foreseeable harm that the defendant was trying to avoid.[6] The court explained that the defense is available:

> if the accused reasonably believed at the time of acting that the first and second elements were present, even if that belief was mistaken; but the accused's belief will not suffice for the third element. An objective determination must be made as to whether the defendant's value judgment was correct, given the facts as he reasonably perceived them.[7]

The necessity defense is an affirmative defense; a defendant must present some evidence of that defense before the defendant is entitled to a jury instruction on the necessity defense.[8] "Some evidence" is evidence which, viewed in the light most favorable to the defendant, is sufficient to allow a reasonable juror to find in the defendant's favor on each element of the defense.[9]

I conclude that the record did not support Allen's request for a necessity instruction. Allen was required to present some evidence that he reasonably believed that he had no adequate alternative to driving with his suspended license. In my view, the trial court's obligation does not end with confirming whether a defendant testified that he or she believed there was no adequate alternative. The trial court must decide whether, in context, a reasonable juror might conclude that the defendant's belief was reasonable. This requires the court to address a question of law; the adequacy of the alternatives available to the defendant.

In *Nelson v. State,*[10] the Alaska Supreme Court ruled, as a matter of law, that Nelson was not entitled to a necessity defense where the record showed that he had adequate alternatives available to breaking the law.[11] Nelson drove his vehicle off the road and got it stuck. He then took heavy equipment from a nearby state highway facility to retrieve his vehicle. The court said that, according to the record, there were several alternatives available to Nelson that did not involve breaking the law. In *Schnabel v. State,*[12] this court ruled that Schnabel was not entitled to instructions on a necessity defense because Alaska law provided Schnabel with an adequate alternative to illegally crossing a salmon stream with heavy equipment. Schnabel was entitled to seek an administrative waiver to allow him to ford the stream with his vehicles, with administrative

---

**5.** 631 P.2d 1073 (Alaska 1981).

**6.** *Id.* at 1078.

**7.** *Id.*

**8.** AS 11.81.320(b); AS 11.81.900(b)(2)(A).

**9.** *Lacey v. State,* 54 P.3d 304, 308 (Alaska App. 2002).

**10.** 597 P.2d 977 (Alaska 1979).

**11.** *Id.* at 980.

**12.** 663 P.2d 960 (Alaska App.1983).

and judicial review available if his waiver application was denied.[13]

Thus, a court faced with a request for a jury instruction on a necessity defense should consider whether there was an "adequate" legal alternative available to the defendant. In other words, does the law allow a person in the defendant's position to break the law rather than pursuing the alternative?

As the majority describes, Allen was less than half a mile from Big John's Liquors when he started breaking the law by driving. I see nothing in the record that shows that Allen was at risk because of the weather or that Allen was disabled. I conclude that the record shows Allen had an adequate alternative; he could have walked less than one-half of a mile for his phone call.