**STATE of Alaska, Petitioner,**

v.

**Lina I. GARRISON, Respondent.**

**No. S–12381.**

Supreme Court of Alaska.

Nov. 9, 2007.

---

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for Appellant.

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I.  INTRODUCTION

Lina Garrison was arrested and charged with one count of felony driving while intoxicated and one count of driving while her license was suspended.  At her first trial Garrison presented the affirmative defense of necessity to the jury.  When that trial ended with a hung jury the state moved for an order precluding Garrison from raising the necessity defense at her second trial.  The superior court denied that motion and the

court of appeals denied the state's ensuing pretrial petition for review. The state now petitions for hearing. Because Garrison presented no evidence that would permit a reasonable person to find that driving intoxicated was safer than anything else she could have done, we vacate the superior court order that allowed Garrison to present the necessity defense to the jury.

## II.  FACTS AND PROCEEDINGS

At about 8:00 p.m. on December 1, 2005 Lina Garrison was a passenger in her own car, traveling southbound on the Egan Expressway, a four-lane highway in the City and Borough of Juneau.[1]  An acquaintance of Garrison identified only as "Travis" was driving Garrison's car because she was intoxicated and lacked a valid driver's license.

As Garrison's car approached the lighted, traffic-signal-controlled intersection at Vanderbilt Hill Road about five miles from downtown Juneau, a pin in the steering wheel's ignition lock unexpectedly popped out, causing the steering wheel to lock.  Travis was somehow able to navigate Garrison's car off the highway to the roadside emergency lane beside the Egan Expressway.  The car stopped just north of the signal lights controlling the Egan Expressway and Vanderbilt Hill Road intersection.  Travis told Garrison that although he could not stay with her because there was a warrant out for his arrest, he would go get help.

Garrison became concerned for her safety soon after Travis left the scene.  In particular, Garrison was afraid of being struck by a passing car traveling at a high speed.

At about 8:15 p.m. Juneau Police Officer Christopher Gifford saw Garrison's car parked on the side of the highway and pulled up behind her.  After Officer Gifford explained to Garrison that her car posed a hazard where it was parked, Officer Gifford offered to call Garrison a tow truck.  Garri-

son asked Officer Gifford to call a tow truck driver named Sid, but Officer Gifford refused because Garrison could not afford to pay Sid for his services.  After Garrison told Officer Gifford that she would use her cell phone to call someone for help, Officer Gifford drove away.

After Officer Gifford left, Garrison realized that her cell phone was not working.  Garrison claimed that as she understood her situation at the time, she had five options: she could (1) walk to Western Auto, which had a phone she could use;  (2) walk to a radio station over two miles away;  (3) hitchhike;  (4) stay in the car and wait for help;  or (5) drive herself several miles to a clearing along the road and walk from there to a payphone.  Garrison concluded that driving herself to the clearing was the safest option. She then put the pin back in the steering wheel ignition lock, started her car, drove on through the Vanderbilt Hill Road intersection, and continued southbound on the Egan Expressway.

The next turnoff available to Garrison was at the Salmon Creek intersection, where she stopped her car at a red light.  Officer Gifford, who was parked there, noticed Garrison's car.  When the traffic light turned green Garrison proceeded on the highway through the intersection towards downtown Juneau.  After briefly following Garrison's car, Officer Gifford pulled Garrison over, performed field sobriety tests, and arrested her for driving while intoxicated.

Garrison was charged with one count of felony driving while intoxicated and one count of driving while her license was suspended. Garrison gave notice before trial that she wished to raise the necessity defense.  The superior court ruled that Garrison had presented "some evidence" in support of the necessity defense and allowed the defense to go to the jury.  The jury could not

---

1. Because the state is asking us to reverse the superior court's order that allowed Garrison to present the necessity defense to the jury, the facts in this part have been described in the light most favorable to Garrison.  *See Dandova v. State,* 72 P.3d 325, 332 (Alaska App.2003) (citing *Paul v. State,* 655 P.2d 772, 775 (Alaska App.1982)) (stating that when determining whether "some evi-

dence" in support of a defense exists, courts view evidence in light most favorable to defendant); *Seibold v. State,* 959 P.2d 780, 782 (Alaska App. 1998) ("A defendant is entitled to a jury instruction on the necessity defense if he [or she] presents 'some evidence' in support of each of the three elements of the defense.") (citations omitted).

reach a verdict and the superior court declared a mistrial.

Before her second trial Garrison again gave notice that she wished to raise the necessity defense. The superior court again ruled that Garrison was entitled to submit the defense to the jury. After the superior court denied the state's motion for reconsideration, the court stayed the second trial pending the outcome of the state's petition for review to the court of appeals. The court of appeals denied the state's petition for review. The state then filed a petition for hearing with this court. We granted the state's petition and ordered full briefing and heard oral argument.

## III. DISCUSSION

### A. Standard of Review

■■■ A defendant is entitled to a jury instruction on the necessity defense if he presents "some evidence" in support of that defense.[2] The term "some evidence" refers to evidence that, if viewed in the light most favorable to the defendant, would allow a reasonable juror to find in the defendant's favor on each element of the defense.[3] Whether a defendant has presented some evidence of a proposed defense is a question that we review de novo, based on the entire record.[4]

### B. The Necessity Defense

■■■ Necessity is an affirmative defense available to criminal defendants "except where preempted or excluded by the legislature."[5] A defendant is entitled to a jury instruction on the necessity defense if she presents "some evidence"[6] that (1) she committed the charged offense to prevent a significant evil; (2) there was no adequate alternative to the charged offense; and (3) the harm caused was not disproportionate to the harm she avoided by breaking the law.[7] If the defendant is charged with a continuing offense, the defendant must also show some evidence that (4) she stopped violating the law as soon as the necessity ended.[8]

■■■ The necessity defense is available if the accused reasonably believed at the time of acting that the first, second, and, if applicable, fourth elements were present,[9] "even if that belief was mistaken; but the accused's belief will not suffice for the third element. An objective determination must be made as to whether the defendant's value judgment was correct, given the facts as he reasonably perceived them."[10]

Garrison argues that she has presented some evidence of each element of the necessity defense. She contends that she has presented some evidence of the first element—that she reasonably believed that she drove her car to prevent a significant evil—because she testified that she believed that if she did

---

2. *Seibold*, 959 P.2d at 782 (citing *Degler v. State*, 741 P.2d 659, 661 (Alaska App.1987); *Schnabel v. State*, 663 P.2d 960, 966 (Alaska App.1983)).

3. *See Ha v. State*, 892 P.2d 184, 190 (Alaska App.1995) (noting that defendant must produce some evidence, viewed in light most favorable to defendant, that tends to prove each element of defense before trial judge may allow jury instruction on that defense).

4. *Cf. Hamilton v. State*, 59 P.3d 760, 771 (Alaska App.2002) ("If there is 'some evidence' of a proposed defense, a judge has no discretion to refuse a timely defense request for a jury instruction on that defense. This is an issue of law which we resolve *de novo* based on the entire record.").

5. *Bird v. Municipality of Anchorage*, 787 P.2d 119, 120–21 (Alaska App.1990) (interpreting AS 11.81.320).

6. *See* AS 11.81.320(b) (stating that necessity is an affirmative defense); AS 11.81.900(b)(2)(A) (stat-

ing that an affirmative defense requires some evidence that places that defense in issue); *see also Lacey v. State*, 54 P.3d 304, 306 (Alaska App.2002); *Seibold*, 959 P.2d at 782; *Degler*, 741 P.2d at 661; *Schnabel*, 663 P.2d at 966.

7. *Cleveland v. Municipality of Anchorage*, 631 P.2d 1073, 1078 (Alaska 1981) (quoting *Nelson v. State*, 597 P.2d 977, 979 (Alaska 1979)).

8. *Allen v. State*, 123 P.3d 1106, 1108 (Alaska App.2005) (citing *Reeve v. State*, 764 P.2d 324, 326 (Alaska App.1988); *Gerlach v. State*, 699 P.2d 358, 362 (Alaska App.1985); *Wells v. State*, 687 P.2d 346, 350 (Alaska App.1984)).

9. *Id.*

10. *Cleveland*, 631 P.2d at 1078 (citing *Nelson*, 597 P.2d at 979, 980 n. 6).

not drive her car, there was a risk her car would be struck by a passing vehicle, potentially causing injury to herself and others, and a risk she would be harmed by a passing stranger.

Garrison also argues that she has presented some evidence of the second element of the necessity defense—that there was no adequate alternative—because she "did not feel that there was a reasonable alternative to her driving, as it was unsafe to walk to Western Auto or along the side of the road for two miles, she feared Officer Gifford, and she did not know of any other alternatives."

Garrison further contends that she has presented some evidence of the third element of the necessity defense—that the harm caused was not disproportionate to the harm avoided—because "the foreseeable harm caused by her driving while intoxicated— where neither property nor people were actually hurt as a result—was less than the foreseeable harm avoided if she had stayed with her vehicle or attempted to cross the highway."

▪▪▪ The defendant's burden of producing "some evidence" in support of a proposed defense is not a heavy one.[11] If a defendant produces some evidence to support each element of a specific instruction, "[a]ny weakness or implausibility" in that evidence is irrelevant.[12] But even though the defendant's supporting evidence may be weak or implausible, the defendant will be entitled to an instruction on the defense if it is at least sufficient to permit a reasonable juror to find that each element of the defense has been satisfied.[13] If the evidence, when viewed in the light most favorable to the defendant,

fails to support one or more elements of a proposed defense, the defendant is not entitled to a jury instruction on that defense.[14]

To satisfy the proportionality element a defendant must as a threshold matter present "some evidence" that the harm she actually caused was not disproportionate to the harm she avoided by breaking the law.[15] If the defendant satisfies the threshold test, the proportionality requirement of the necessity defense then "calls for a balancing of values and requires that the actor's conduct effect a net benefit."[16] In this case, the reasonably foreseeable harm that could have resulted from Garrison's failure to act must be balanced against the reasonably foreseeable harm that could have resulted from Garrison's illegal action.[17] Garrison had the burden of establishing the defense of necessity by a preponderance of the evidence.[18]

The parties disagree about whether the court or the jury should objectively determine whether Garrison's value judgment regarding her choice to drive while intoxicated was correct. The state argues that the proportionality element "is a question of law that must be decided by the trial judge before the defendant may present the necessity defense to the jury." Garrison responds by arguing that the proportionality element is a question for the jury.

The state cites two prior decisions of this court to support the state's contention that the proportionality element presents a question of law. It cites *Nelson v. State,*[19] in which we noted that "the majority of jurisdictions appear to hold that [determination of the proportionality element] must be made, at least initially, by the court."[20] We then

---

**11.** *Carson v. State,* 736 P.2d 356, 359 (Alaska App.1987); *see also Brown v. State,* 698 P.2d 671, 674 (Alaska App.1985); *Brown v. Anchorage,* 680 P.2d 100, 103 (Alaska App.1984); *Paul,* 655 P.2d at 775.

**12.** *Toomey v. State,* 581 P.2d 1124, 1126 n. 10 (Alaska 1978) (citations omitted).

**13.** *See Ha v. State,* 892 P.2d 184, 190 (Alaska App.1995).

**14.** *See id.*

**15.** *See Allen,* 123 P.3d at 1108; *Gerlach,* 699 P.2d at 362; *Wells,* 687 P.2d at 350.

**16.** 2 PAUL H. ROBINSON, CRIMINAL LAW DEFENSES § 124(d), at 50 (1984 & Supp.1999).

**17.** *Cleveland v. Municipality of Anchorage,* 631 P.2d 1073, 1080 (Alaska 1981).

**18.** AS 11.81.900(b)(2)(B).

**19.** *Nelson v. State,* 597 P.2d 977 (Alaska 1979).

**20.** *Id.* at 980 n. 6 (citing Lawrence P. Tiffany & Carl A. Anderson, *Legislating the Necessity Defense in Criminal Law,* 52 Denv. L.J. 839, 871–72 (1975)).

held, as a matter of law, that the defendant's "fears about damage to his truck roof were no justification for his appropriation of" two Highway Department vehicles.[21] Two years later, in *Cleveland v. Municipality of Anchorage*,[22] we stated that "[a]n objective determination [of the proportionality element] must be made"[23] and held that because the Alaska legislature had "already spoken as to the balancing" in front of the court and concluded that the interests the defendants sought to vindicate are outweighed by the interests they sought to invade,[24] "the legislature has resolved 'the choice of evils' questions [the defendants] would have [this court] decide."[25]

The state also cites two post-*Cleveland* court of appeals cases, *Seibold v. State*[26] and *Allen v. State*.[27] In *Seibold*, the court of appeals expressly held for the first time[28] that "the court" objectively determines the proportionality element.[29] The court maintained, however, that a defendant "is entitled to a jury instruction on the necessity defense if he presents 'some evidence' in support of each of the three elements of the defense."[30] Dissenting, Judge Mannheimer wrote that "[i]t is the duty of the courts to declare the law of necessity—to define the scope and the limits of the defense through the process of deciding individual cases."[31] This language

is instructive of the court of appeal's rationale in *Allen v. State*,[32] its most recent decision that addresses the proportionality element. In *Allen*, Judge Mannheimer, writing for the majority, stated in dictum that the

> third element of the necessity defense— the proportionality of the harm done compared to the harm avoided—is a question of law to be decided by the judge. The judge must make "an objective determination ... as to whether the defendant's value judgment was correct, given the facts as [the defendant] reasonably perceived them."[33]

But in *McGee v. State*, we avoided deciding whether the jury should play a role in determining proportionality.[34] Viewing the issue of proportionality from the defendant's perspective, we discerned no basis for declaring as a matter of law that the physical damage caused by McGee outweighed the serious physical injury he feared at the time.[35] We went on to reverse McGee's conviction and remand, concluding that the "some evidence" test had been met as to all elements of his necessity defense; we expressed no opinion as to whether proportionality should be considered by the jury on retrial.[36]

If, as the state argues, Garrison has failed to present "some evidence" that places the necessity defense in issue, it will be unneces-

---

21. *Id.* at 980.

22. *Cleveland v. Municipality of Anchorage*, 631 P.2d 1073 (Alaska 1981).

23. *Id.* at 1078.

24. *Id.* at 1081.

25. *Id.* at 1081 n. 17.

26. *Seibold v. State*, 959 P.2d 780 (Alaska App. 1998).

27. *Allen v. State*, 123 P.3d 1106 (Alaska App. 2005).

28. In *Reeve v. State*, 764 P.2d 324, 326 (Alaska App.1988), the court of appeals acknowledged that "the proper division of responsibility between the court and the jury in evaluating" the proportionality element was a difficult, unresolved issue.

29. *Seibold*, 959 P.2d at 782 (citing *Bird*, 787 P.2d at 120–21 (quoting *Cleveland*, 631 P.2d at 1078)). This approach is also consistent with the analysis

of professors LaFave and Scott. 1 WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 5.4(d)(4), at 36 (1986) ("It is for the court, not the defendant, to weigh the relative harmfulness of the [harm avoided and the harm done]....").

30. *Seibold*, 959 P.2d at 782 (citing *Degler v. State*, 741 P.2d 659, 661 (Alaska App.1987); *Schnabel v. State*, 663 P.2d 960, 966 (Alaska App.1983)).

31. *Id.* at 788 (citing *United States v. Schoon*, 971 F.2d 193, 196–97 (9th Cir.1991)).

32. *Allen v. State*, 123 P.3d 1106 (Alaska App. 2005).

33. *Id.* at 1108 (citing *Seibold*, 959 P.2d at 782 (quoting *Bird*, 787 P.2d at 120–21)).

34. *McGee v. State*, 162 P.3d 1251 (Alaska 2007).

35. *Id.* at 1262.

36. *Id.* at 1261–62.

sary for us to decide whether the court or the jury should decide whether the proportionality element has been met.

The state contends that "Garrison has not identified any reasonably foreseeable harm that was greater than the risk she created when she got behind the wheel of her car and drove drunk down a busy four-lane highway." Garrison responds by arguing that a "serious physical injury" was the reasonably foreseeable harm that she avoided by driving. Garrison argues that she was in reasonably foreseeable danger of being struck by a passing car, being harmed by a stranger, or suffering from an allergic reaction to the cold weather.

■■■ We acknowledge that the threshold for the "some evidence" test is low; "some evidence" is evidence which, viewed in the light most favorable to Garrison, is sufficient to permit a reasonable juror to find in Garrison's favor on the proportionality element of the necessity defense.[37] As Garrison observes, "some evidence" only requires "more than a scintilla" and any doubt should be resolved in her favor.[38]

Garrison testified about the foreseeable harms that she allegedly avoided by driving her car. She testified that it was unsafe to walk to Western Auto because she would have had to cross four lanes of highway. She also testified that it would have been unsafe to walk to the radio station for various reasons. The radio station was about two miles away from where she was parked; it was dark and she was wearing dark clothing; she was afraid that a stranger might take advantage of her because she was alone and a female; and she had a rare skin disorder that caused her to suffer an allergic reaction to cold weather. Garrison also testified that hitchhiking would have been unsafe because it was nighttime. Finally, she testified that it would have been unsafe for her to have stayed in her car because her car was a hazard to passing motorists where it was parked.

Garrison testified that these fears were foreseeable because she was parked on the side of the "busiest highway in Juneau"; she knew of two people who had been killed while changing a tire on the side of that highway; it was cold, dark, and the roads were icy; and she did not know if her car's flashers were working. Although this evidence shows that she subjectively believed that driving was her safest alternative, it is insufficient to support an objective finding that her belief was correct.

In *McGee* we determined that the defendant adequately raised the defense of necessity by claiming that he caused property damage to avoid a potentially serious physical injury.[39] The defendant's claim included testimony that he acted in a "panicked state of mind triggered by [a] sudden, unprovoked attack and express threat of imminent death."[40] In *Allen*, the court of appeals allowed a necessity defense to go to the jury where the defendant drove with a suspended license because he reasonably believed that his mother needed speedy medical attention.[41]

But Garrison presented no evidence that could permit a reasonable jury to find that any of the alleged harms she avoided outweighed the very real dangers she risked by driving drunk. Garrison contends that her fears were reasonably foreseeable, yet refers us to no evidence about the frequency, likelihood, or immediacy of the alleged harms. She provided no plausible basis for finding that those supposed harms were real. Furthermore, it is irrelevant that, as Garrison notes, her conduct did not result in actual harm to people or property; her conduct is weighed against the very real harm reasonably foreseeable when she began driving, rather than the harm that actually occurred.[42]

**37.** *Lacey v. State*, 54 P.3d 304, 308 (Alaska App. 2002).

**38.** *Christie v. State*, 580 P.2d 310, 314–15 (Alaska 1978).

**39.** *McGee*, 162 P.3d at 1262.

**40.** *Id.* at 1262 n. 54.

**41.** *Allen*, 123 P.3d at 1108–09.

**42.** *Nelson v. State*, 597 P.2d 977, 979–80 (Alaska 1979) (citations omitted).

Finally, Garrison believed that Officer Gifford was going to return in ten minutes. She produced no evidence that would have permitted a reasonable person to find that during that ten-minute period the harm she may have faced had she taken any alternative action outweighed the harm she risked by driving drunk for an extended distance. Garrison's failure to present that evidence precludes her from submitting the necessity defense to the jury as a matter of law.

## IV. CONCLUSION

Because Garrison produced no evidence that would permit a reasonable person to find that driving intoxicated was safer than anything else she could have done, she is not entitled to present the necessity defense to the jury as a matter of law. We therefore VACATE the superior court order that permitted Garrison to submit the necessity defense to the jury.