David J. SCHAREN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10550.

Court of Appeals of Alaska.

March 18, 2011.

---

Margi A. Mock, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant.

Ann B. Black, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

### OPINION

MANNHEIMER, Judge.

David J. Scharen appeals his conviction for driving under the influence. Scharen argues that the trial judge committed error by refusing to instruct the jury on the defense of "necessity". For the reasons explained in this opinion, we conclude that the trial evidence fails to support a defense of necessity. In particular, the evidence, even when construed in the light most favorable to Scharen, fails to support the conclusion that Scharen had no reasonable alternative but to take control of a motor vehicle while intoxicated. We therefore affirm Scharen's conviction.

### Underlying facts

In January 2009, Scharen and his wife attended a Juneau Ski Club fund-raising event that was held at a downtown bar, the Viking Lounge. (Scharen's wife's employer was a member of the ski club, and she was one of the people working at this fund-raiser.)

The Scharens arrived around 6:00 p.m., and over the course of the next hour, Scharen drank alcoholic beverages. Around 7:00 or 7:30, Scharen began to fall asleep, so his wife told him to go outside and wait for her in their minivan until the fund-raiser was over. Scharen's wife gave him the keys so he could get into the vehicle.

Scharen left the Viking Lounge and walked to the minivan. When he arrived at the vehicle, he got into the driver's seat, inserted the keys into the ignition, and started the engine (so that the vehicle would be warm; the outside temperature was 18 degrees). Scharen then deliberately went to sleep.

Around 9:00 p.m., a passerby saw Scharen sitting or lying unconscious in the driver's seat, inside the running vehicle. When the passerby was unable to rouse Scharen, he summoned the police. A police officer arrived and woke Scharen up by knocking on the window and shining a light into Scharen's eyes. Scharen stumbled out of the minivan; he smelled of alcoholic beverages, and he swayed while standing. The officer administered field sobriety tests to Scharen, and then he arrested Scharen for operating a motor vehicle under the influence. Scharen's breath test revealed that he had a blood alcohol level of .13 percent.

At trial, Scharen's lawyer asked the trial judge—District Court Judge Keith B. Levy—to instruct the jury on the defense of necessity. Judge Levy declined to give the proposed instruction because Scharen failed to present any evidence that he lacked reasonable alternatives to (1) leaving the bar, (2) deciding to sleep in the minivan, and (3) operating the vehicle's engine to stay warm. Here is the pertinent part of Judge Levy's ruling:

Scharen [has] failed to produce any evidence that [a] threat [of] imminent harm required him to leave the bar, go to his car, and start the engine. [The immediate difficulty confronting Scharen was that he] was falling asleep in the bar. But the theoretical social embarrassment caused by that situation did not create an emergency that required him to [assume control of a motor vehicle and] start the engine.

He was not stranded in a vehicle without a sober driver or [without] alternatives to starting the engine. He was sitting in a warm bar in downtown Juneau. To the extent that there was any ... threat [of] imminent harm [because of the cold weather] when Scharen left the bar and entered his vehicle, he created that situation [by leaving the bar and going to sit in the vehicle].

*Why we conclude that Scharen failed to present a triable issue as to whether his decision to assume control of the motor vehicle, and his decision to operate this vehicle (by turning on the engine), were justified by necessity*

■ A criminal defendant is entitled to a jury instruction on the defense of necessity if the evidence, viewed in the light most favorable to the proposed defense, is sufficient to allow a reasonable fact-finder to conclude: (1) that the defendant committed the charged offense to prevent a significant evil; (2) that, given the circumstances (as the defendant reasonably perceived them), the defendant had no reasonable alternative—no adequate way to avoid this significant evil except by committing the charged offense; and (3) that the harm threatened or caused by the defendant's crime was not disproportionate to the harm that the defendant sought to avoid by breaking the law. *State v. Garrison*, 171 P.3d 91, 94 (Alaska 2007).

■ It is a question of law whether the trial evidence (viewed in the light most favorable to the proposed necessity defense) was sufficient to support a decision in the defendant's favor on each of these three elements. In other words, an appellate court does not defer to the trial judge's assessment of whether the evidence was legally sufficient to justify a jury instruction on the defense of necessity. Rather, an appellate court decides this issue *de novo*. *Garrison*, 171 P.3d at 94.

Assuming that the evidence is sufficient to support a decision in the defendant's favor on each of these three elements, Alaska law declares that the first two elements of the necessity test are to be decided by the finder of fact (*i.e.*, the jury, unless the defendant has consented to a bench trial). Alaska law does not yet provide a fixed answer to the question of whether the third element is to be decided by the fact-finder or, instead, it is a question of law to be decided by the judge presiding over the trial. *Garrison*, 171 P.3d at 95–97.

To resolve Scharen's case, we need not resolve the question of whether the third element of the defense should be decided by the finder of fact or, instead, by the trial judge. As was true in *Garrison*, this issue is moot because the evidence was not legally sufficient to justify a decision in Scharen's favor on the elements of necessity.

The first element is that the defendant committed the charged offense to prevent a significant evil. Scharen argues that he faced a significant evil—injury or death because of the sub-freezing temperatures—if he sat in the unheated vehicle for hours. But AS 11.81.320(a) declares that the defense of necessity is available only "to the extent permitted by common law". And the common law (as generally applied throughout this country) does not allow a defendant to rely on the defense of necessity if the underlying claim is that the defendant was required to break the law in order to avoid, cure, or alleviate a significant evil of their own making.

As explained in Wayne R. LaFave, *Substantive Criminal Law* (2nd ed.2003), § 10.1(d)(6), Vol. 2, pp. 132–33, and in Paul H. Robinson, *Criminal Law Defenses* (1984), § 123(a) & n. 2, Vol. 2, p. 30, the American jurisdictions that recognize a "necessity" or "choice of evils" defense are in general agreement that the defendant's creation of the danger or evil will limit the availability of the defense. There is, however, a split among the jurisdictions regarding the scope of this limitation.

A few jurisdictions declare that the defense of necessity is simply not available to a defendant who was at fault in creating the situation that allegedly required the defendant to break the law. *LaFave*, § 10.1(d)(6); *Robinson*, § 123(a), n. 2.

A more moderate approach—the approach reflected in § 3.02(2) of the Model Penal Code—is that the availability of the necessity

defense hinges on the defendant's level of culpability in creating the dangerous situation. Under this approach, if the defendant *knowingly* brings about the dangerous situation, then the defendant can not rely on the defense of necessity to justify a criminal act designed to cure or alleviate the dangerous situation.

(The Model Penal Code actually uses the term "intentional" to describe the culpable mental state denoting purposeful or deliberate conduct. The Alaska Criminal Code uses the word "knowing" to describe this culpable mental state. *See Neitzel v. State*, 655 P.2d 325, 326, 329–330 (Alaska App.1982).)

If, on the other hand, the defendant was *reckless* in bringing about the dangerous situation, then the defendant will be allowed to raise a necessity defense against a criminal charge that requires proof of intentional or knowing conduct, but will not be allowed to raise the defense against a charge that only requires proof of reckless or negligent conduct. And if the defendant was merely *negligent* in bringing about the dangerous situation, then the defendant will be allowed to raise a necessity defense against a criminal charge that requires proof of intentional, knowing, or reckless conduct, but will not be allowed to raise the defense against a charge that only requires proof of negligent conduct. *LaFave* and *Robinson, supra*.

Turning to the facts of Scharen's case, Judge Levy found that Scharen knowingly created the situation that allegedly required him to turn the vehicle's engine on. As Judge Levy explained in his ruling, the testimony presented at Scharen's trial showed that Scharen was sitting in a warm bar, safe from the elements, and that Scharen then made a conscious decision to leave the bar and go sit in the minivan until his wife finished her work at the ski club fund-raiser.

We further note that Scharen's initial act of taking the keys from his wife and going to wait in the driver's seat of the minivan was *itself* illegal. Even if Scharen had never started the engine, his act of assuming physical control of the vehicle constituted the offense of "driving while under the influence"—because, for purposes of this offense, "driving" includes the act of assuming actual physical control of an operable motor vehicle, even if one does not operate the vehicle. See *Kingsley v. State*, 11 P.3d 1001, 1003 (Alaska App.2000), where this Court held that a defendant was properly convicted of driving under the influence when the defendant was the sole occupant of the vehicle, he was sitting behind the steering wheel, and he had the keys to the vehicle in his pocket—even though the engine was not running and even though the defendant made no active attempt to start the engine.

Thus, Scharen's alleged necessity to turn the engine on (so that he could stay warm) was created by Scharen's own unlawful act of assuming physical control of the vehicle and waiting in the car for his wife.

Because, under Alaska law, the necessity defense is available only to the extent allowed by the common law, and because Scharen made a conscious choice to unlawfully put himself in a position where he would need to start the engine to keep warm, Scharen had no legal right to rely on a defense of necessity.

We expressly do not decide the precise extent to which a defendant's own fault in creating the dangerous situation will limit or bar the defendant from raising a defense of necessity. Our holding is limited to the situation presented here, where the defendant knowingly created a situation that would require the defendant to engage in unlawful conduct.

Turning to the second element of the necessity defense, we conclude that Scharen likewise failed to present sufficient evidence to justify a verdict in his favor on this element of the defense—the requirement that, given the circumstances (as the defendant reasonably perceived them), the defendant had no reasonable alternative method to avoid the significant evil except by committing the charged offense.

The pertinent circumstances were that Scharen went to sit in the minivan until his wife was done with the ski club fund-raiser, and it was so cold outside that Scharen could not realistically continue to sit in the vehicle unless he turned the engine on and generated heat. But as Judge Levy noted, Scharen

had several alternatives to continuing to sit in the minivan.

First, Scharen could have returned to the bar. Scharen's only ostensible reason for leaving the bar in the first place was that he or his wife might potentially be embarrassed because Scharen was visibly falling asleep at the fund-raiser. The bar remained an easily available and adequate alternative solution to the problem of the cold weather.

Scharen points to trial testimony (from a police officer) indicating that it would have been unlawful for Scharen to stay in the bar. According to this testimony, it is a crime under Alaska law for a person to remain in a bar if the person is intoxicated. The officer was apparently referring to AS 04.16.040, which states that "a drunken person may not knowingly enter or remain on [licensed] premises".

We are not sure whether the legislature intended this category of "drunken" persons to be construed as broadly as the category of persons who would be considered "under the influence" for purposes of Alaska's motor vehicle laws. Moreover, as Judge Levy found, there is nothing in the evidence to suggest that Scharen's decision-making was influenced in any fashion by this supposed statutory ban on the presence of intoxicated people in bars.

When Judge Levy denied the proposed jury instruction on the necessity defense, he stated:

> Scharen argue[s] ... that he had to leave the bar because[,] if he ... remained in the bar, he could have been charged with being intoxicated on license[d] premises in violation of AS 04.16.040. But in ... Scharen's statements to [the police officer], Scharen is heard to insist repeatedly that he was not under the influence and that he had consumed only two drinks. Therefore, the evidence does not indicate that [Scharen] believed [that] he [would be] committing a crime by remaining in the bar.

Although Judge Levy's finding refers only to Scharen's statements to the police officer at the scene, we also note that when Scharen took the stand at his trial, explaining his actions and decisions, he never referred to this supposed ban on the presence of intoxicated people in bars. Much less did Scharen state (or even suggest) that his decisions and actions in this case were premised on this supposed statutory ban.

According to Professor LaFave's *Substantive Criminal Law*, § 10.1(d)(3), Vol. 2, pp. 125–26, a claim of necessity can not be premised on a necessity that was perceived only after the fact. A defendant who advances a claim of necessity must present evidence that they acted *with the subjective intention* of avoiding, curing, or alleviating a *perceived* evil. It is not enough for the defendant to show, after the fact, that an actual necessity existed, and that this necessity would have justified the defendant in breaking the law if the defendant had known about it. If the defendant did not perceive the competing evils, and if the defendant broke the law without making a conscious choice among these competing evils, then the necessity defense is unavailable to the defendant. *Ibid.*

That is the situation in Scharen's case. There is no evidence that Scharen believed (at the time) that he was legally obliged to leave the bar, or that, having once left the bar, he was legally banned from returning. This supposed statutory ban played no part in his decision-making or his actions. Accordingly, under the law as described in *La-Fave*, Scharen would be unable to rely on the argument that he was prohibited by statute from remaining in (or returning to) the Viking Lounge.

But see the discussion of this point in Robinson's *Criminal Law Defenses*, § 122, Vol. 2, pp. 12–29, where Professor Robinson questions the fairness of denying a necessity defense to a person whose conduct, viewed objectively and after the fact, turned out to be appropriate.

We need not decide this issue—because, even if we assume that Scharen could not lawfully stay in the bar, there were other ways he might have dealt with the situation. It was early in the evening, and other businesses and restaurants were open in downtown Juneau. Alternatively, Scharen might have asked a friend or other member of the ski club to drive him home, or to lend him

the money to take a cab. It appears, from Scharen's testimony, that he did not even consider these alternatives. Here is the pertinent excerpt of Scharen's cross-examination by the prosecutor, in which the prosecutor asked Scharen why he had not taken a cab home:

> *Prosecutor:* So, Mr. Scharen, you indicated that you had credit cards on you, but that you didn't have any [credit remaining] on them?

> *Scharen:* No, there [was] nothing on them.

> *Prosecutor:* So, as a matter of personal convenience, you couldn't have called a taxicab to go home?

> *Scharen:* No.

> *Prosecutor:* [You] couldn't have called a friend?

> *Scharen:* Not really. I mean, why would I call a friend when I was waiting for my wife?

Based on this record, we conclude that no reasonable fact-finder could have decided in Scharen's favor on the question of whether Scharen had other adequate methods (apart from breaking the law) to deal with the situation.

Because there was insufficient evidence to support findings in Scharen's favor on the first and second elements of necessity, the third element of the necessity defense is moot. The question presented by this third element—whether the harm threatened or caused by the defendant's crime was disproportionate to the harm that the defendant sought to avoid by breaking the law—does not arise unless the evidence would support a finding in the defendant's favor on the first two elements of the necessity defense.

For these reasons, we uphold Judge Levy's decision not to instruct the jury on Scharen's proposed necessity defense.

*Conclusion*

The judgement of the district court is AFFIRMED.