Dale Lee **NELSON**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 3802.

Supreme Court of Alaska.

July 20, 1979.

Robert Coats, Asst. Public Defender, Fairbanks, Brian C. Shortell, Public Defender, Anchorage, for appellant.

Rhonda F. Butterfield, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

MATTHEWS, Justice.

Shortly after midnight on May 22, 1976, Dale Nelson drove his four-wheel drive truck onto a side road off the Steese Highway near mile 68. His truck became bogged down in a marshy area about 250 feet off the highway. Nelson testified that he was afraid the truck might tip over in the soft ground. He and his two companions, Lynnette Stinson and Carl Thompson, spent an hour unsuccessfully trying to free the vehicle. At about 1:00, Nelson began walking with Stinson down the highway. An acquaintance drove by and offered to help, but was unable to render much assistance. He then drove Nelson and Stinson to a Highway Department Yard where heavy equipment was parked. The yard was

marked with "no-trespassing" signs. After waiting several hours for someone to come by, they decided to take a dump truck and use it to pull out Nelson's vehicle. The dump truck also became stuck.

At approximately 10:00 that morning a man identified only as "Curly" appeared. His vehicle was also stuck further down the highway. Curly offered to assist Nelson. They returned to the heavy equipment yard and took a front-end loader, which they used to free the dump truck. They then used the dump truck to free Curly's car. The dump truck was returned to the equipment yard, but when Nelson attempted to use the front-end loader to free his own truck the front-end loader also became bogged down.

Frustrated and tired after twelve hours of attempting to free his vehicle, Nelson and his companions quit and went to sleep. Two of them slept in a tent. One of them went to sleep in the truck. They were awakened by a Highway Department employee, who placed them under citizen's arrest.

Considerable damage was done to both the front-end loader and the dump truck as a result of Nelson's attempt to free his truck.[1] Ultimately, the truck was pulled from the mud three days later. Nelson was convicted in district court of reckless destruction of personal property in violation of AS 11.20.515(b)[2] and joyriding in violation of AS 28.35.010.[3] This conviction was affirmed on appeal to the superior court.

The sole question presented is whether the jury was properly instructed on the defense of necessity. Nelson requested an instruction which read:

You are instructed that the defendant is allowed to use a motor vehicle of another person without permission if the use is for an emergency in the case of immediate and dire need.

You are further instructed that once the defendant has raised the issue of emergency or necessity, the state must prove the lack of emergency or necessity beyond a reasonable doubt.

Over Nelson's objection, the court gave an instruction on the necessity defense which read as follows:

You are instructed that it is a defense to a crime such as joyriding or taking someone else's motor vehicle without his permission that the person acted out of necessity in a case of immediate and dire need. However, such a defense exists only when natural forces create a situation wherein it becomes necessary for a person to violate the law in order to avoid a greater evil to himself or his property. The harm which is to be avoided must be the greater harm and it must be immediate and dire. Where a reasonable alternative other than violating the law is available in order to avoid the harm the defense of necessity is not applicable.[4]

1. Nelson was unaware that the front-end loader was undergoing repairs and that the transmission lubricant had been removed. His operation of the loader resulted in an estimated $10,000 worth of damage. In addition the clutch on the dump truck had to be replaced, and other miscellaneous repairs were required.

2. AS 11.20.515(b) provides:

A person who wilfully interferes with or tampers with property not his own, with the purpose to harm the property of another person, or with reckless disregard for the risk of harm to or loss of the property, is guilty of malicious mischief and, upon conviction, is punishable by imprisonment for not more than one year, or by a fine of not less than $100 nor more than $5,000 or by both.

3. AS 28.35.010(a) provides in part:

*Driving a vehicle without owner's consent.* (a) A person who drives, tows away, or takes a vehicle not his own without the consent of the owner, with intent temporarily to deprive the owner of possession of the vehicle, or a person who is a party or accessory to or an accomplice in the driving or unauthorized taking is guilty of a misdemeanor, and upon conviction is punishable by imprisonment for not less than 30 days nor more than one year, and by a fine of not less than $100 nor more than $1,000.

4. Both instructions were based partly on language contained in AS 11.20.135 which provides in part:

*Unauthorized entry, use or occupancy of property.* (a) It is unlawful for a person to enter, use or occupy any occupied or unoccupied dwelling, house, tent, hotel, office, store,

Nelson argues that the jury instruction was erroneous because it allowed the jury to apply what he calls an "objective, after-the-fact" test of need and emergency, rather than a "subjective, reasonable man" test. By this we assume Nelson means that he was entitled to have explained to the jury that they must view the question of necessity from the standpoint of a reasonable person knowing all that the defendant did at the time he acted.

We affirm the conviction. We note at the outset that the instruction proposed by Nelson is similarly lacking of any explicit language allowing the jury to find necessity if there was a reasonable belief that an emergency existed as opposed to an actual emergency. Thus even if Nelson's proposed instruction had been given verbatim the alleged error would not have been corrected. Beyond this, however, we find any error in the instruction given to have been harmless.

■ The defense of necessity may be raised if the defendant's actions, although violative of the law, were necessary to prevent an even greater harm from occurring.

The rationale of the necessity defense is not that a person, when faced with the pressure of circumstances of nature, lacks the mental element which the crime in question requires. Rather, it is this reason of public policy: the law ought to promote the achievement of higher values at the expense of lesser values, and sometimes the greater good for society will be accomplished by violating the literal language of the criminal law.

W. LaFave & A. Scott, *Criminal Law* § 50 at 382 (1972).

Commentators generally agree that there are three essential elements to the defense: 1) the act charged must have been done to prevent a significant evil; 2) there must have been no adequate alternative; 3) the harm caused must not have been disproportionate to the harm avoided. Arnolds & Garland, *The Defense of Necessity in Criminal Law: The Right to Choose the Lesser Evil,* 65 J. of Crim.L.P. & C.S. 289, 292 (1974); See W. LaFave & A. Scott, *supra* § 50 at 385–88.

■ The instruction given adequately describes these requirements for the jury. Nelson argues that he was entitled to wording which would explicitly allow the jury to find a necessity defense if a reasonable person at the time of acting would have believed that the necessary elements were present. Nelson is correct in stating that the necessity defense is available if a person acted in the reasonable belief that an emergency existed and there were no alternatives available even if that belief was mistaken.[5] Moreover, the person's actions

shop, warehouse, barn, factory or other building, boat, ship, motor vehicle, railroad car or structure, or apartment, cottage, clubhouse, bathhouse, hunting or fishing lodge, garage or any other structure, or use any personal property therein, except with the consent of the owner of the facility or his agent. However, a person may enter, use or occupy an unoccupied structure specified in this section without the consent of the owner if

(1) the entry, use or occupancy of the facility is for an emergency in the case of immediate and dire need, . . . . .

AS 11.81.320 of the Alaska Revised Criminal Code, effective January 1, 1980, recognizes the necessity defense by providing:

*Justification: Necessity.* Conduct which would otherwise be an offense is justified by reason of necessity to the extent permitted by common law when

(1) neither this title nor any other statute defining the offense provides exemptions or

defenses dealing with the justification of necessity in the specific situation involved; and (2) a legislative intent to exclude the justification of necessity does not otherwise plainly appear.

*See generally,* Stern, *The Proposed Alaska Revised Criminal Code,* 7 UCLA–Alaska L.Rev. 1, 35 (1977).

**5.** *United States v. Ashton,* 24 F.Cas. 873, 874 (No. 14,470) (C.C.D.Mass.1834); W. LaFave & A. Scott, *supra* § 50 at 384–88; Arnolds & Garland, *supra* at 294. *See Townsend v. United States,* 68 App.D.C. 223, 95 F.2d 352, 358 (1938); *Hall v. State,* 136 Fla. 644, 187 So. 392 (1939).

The Model Penal Code does not require that the actor's belief be reasonable. However, if he is "reckless or negligent . . . in appraising the necessity for his conduct," he has no defense to crimes in which recklessness or negligence suffice to establish culpability. ALI

should be weighed against the harm reasonably foreseeable at the time, rather than the harm that actually occurs.[6]

Assuming that the instruction given was not worded adequately to convey these concepts to the jury, we would find the error harmless, for Nelson failed to make out a case for the necessity defense. The "emergency" situation claimed by Nelson to justify his appropriation of the construction equipment was the alleged danger that his truck, stuck in the mud, might tip over, perhaps damaging the truck top. However by the time Nelson decided to use the equipment the truck had already been stuck for several hours. The dire nature of the emergency may be judged by the fact that some twelve hours later, having unsuccessfully attempted to remove the vehicle from the mud, one of Nelson's companions fell asleep in the truck, which had still not tipped over.

Nor can it be said that Nelson had no lawful alternatives in his situation. The record shows that during the time Nelson was trying to free the vehicle people stopped on several different occasions and offered their services in the form of physical assistance, rides, or offers to telephone state troopers or a tow truck.

Finally, it cannot be said that the harm sought to be avoided in this case—potential damage to Nelson's truck—was greater than the harm caused by Nelson's illegal actions. Even disregarding the actual damage to the equipment caused by Nelson's use, the seriousness of the offenses committed by Nelson were disproportionate to the situation he faced. The legislature has made this clear by making reckless destruction of personal property a crime punishable by imprisonment for up to one year and a $5,000 fine,[7] and joyriding punishable by imprisonment for up to one year and a $1,000 fine.[8] The equipment taken by Nelson was marked with no trespassing signs. Nelson's fears about damage to his truck roof were no justification for his appropriation of sophisticated and expensive equipment.

AFFIRMED.

Model Penal Code § 3.02 (1962) and Commentary; W. LaFave & A. Scott, *supra* § 50 at 386 n. 32.

It appears that a few jurisdictions require a showing of an actual emergency. A reasonable belief that an emergency exists or that there are no lawful alternatives is not enough. *See* Tiffany & Anderson, *Legislating the Necessity Defense in Criminal Law*, 52 Den.L.J. 839, 855–56 (1975).

6. W. LaFave & A. Scott, *supra* § 50 at 386. *But see State v. Marley*, 509 P.2d 1095, 1109 (Hawaii 1973) (necessity defense available only where harm resulting from compliance with law would significantly exceed the harm *actually resulting* from the actor's violation of law).

As noted above, the defendant must also have acted in the belief that the reasonably foreseeable harm resulting from the violation would be less than the harm resulting from compliance with the law. However, here the defendant's belief is not by itself sufficient. An objective determination must be made as to whether the defendant's value judgment was correct, given the facts as he reasonably perceived them. W. LaFave & A. Scott, *supra* § 50 at 386–87; Tiffany & Anderson, *supra* note 5, at 871. The majority of jurisdictions appear to hold that this determination must be made, at least initially, by the court. Tiffany & Anderson, *supra* note 5, at 871–72.

7. *See* note 2 *supra*.

8. *See* note 3 *supra*.