Willie BELL, Appellant,

v.

STATE of Alaska, Appellee.

No. 6707.

Court of Appeals of Alaska.

Feb. 10, 1983.

Christine Schleuss, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

In August of 1981 Willie Bell was serving a sentence of five years with three years suspended on two felony convictions for promoting prostitution. On the night of August 27, 1981, Bell left the Palmer Correctional Center where he was incarcerated. Bell was apprehended the next morning and ultimately was convicted of escape from a correctional facility, a class B felony.[1] Judge Justin Ripley found that Bell was a second felony offender and sentenced him to a presumptive sentence of four years.[2] Judge Ripley made this sentence consecutive to Bell's prior sentences on the promoting prostitution convictions. Bell appeals to this court, raising several arguments concerning his sentence.

■ Bell argues that Judge Ripley erred in sentencing him to a presumptive sentence as a second felony offender. Bell contends that Judge Ripley allowed the state to use his prior felony convictions to prove an element of the escape charge: that he was in "a correctional facility while under official detention." Bell argues that since evidence of his confinement on his prior offenses was used to prove this element of his escape charge, it was error for Judge Ripley to also use these prior offenses to sentence him as a second felony offender and to impose a presumptive sentence.[3] Bell refers to AS 12.55.155(e), which states in relevant part; "If a factor in aggravation is a necessary element of the present offense, that factor may not be used to aggravate the presumptive term."

We have previously addressed this same argument in *Fry v. State*, 655 P.2d 789, (Alaska App.1983). Fry was convicted of misconduct involving weapons in violation of AS 11.61.200(a)(1), a class C felony, for being a previously convicted felon in possession of a concealable firearm. Fry was sentenced to a presumptive sentence as a second felony offender. He argued that he should not have been sentenced as a second felony offender because his first felony con-

---

1. AS 11.56.310(a)–(b) reads in pertinent part:
   *Escape in the second degree.* (a) A person commits the crime of escape in the second degree if, without lawful authority, he
   (1) removes himself from
   (A) a correctional facility while under official detention;
   (B) official detention for a felony or for extradition; or
   (C) official detention and during the escape, or at any time before being restored to official detention, he possesses on or about his person a firearm;
   . . . .
   (b) Escape in the second degree is a class B felony.

2. AS 12.55.125(d)(1) provides:

   (d) a defendant convicted of a class B felony may be sentenced to a definite term of imprisonment of not more than 10 years, and shall be sentenced to the following presumptive terms, subject to adjustment as provided in AS 12.55.155–12.55.175 [aggravating and mitigating factors]:
   (1) if the offense is a second felony conviction, four years;

3. We note that there is a strong argument that Bell's prior convictions were not actually used to prove an element of the escape charge. The state had only to prove that Bell was in "a correctional facility while under official detention" and not that he had formerly been convicted.

viction had been used to establish an element of his felon in possession offense: that he was a previously convicted felon. We rejected Fry's argument and concluded that Fry's felon in possession conviction was his second felony conviction and that he was therefore subject to presumptive sentencing as a second felony offender. We pointed out that

> AS 12.55.155(e) does not purport to deal with limitations on the applicability of presumptive sentencing under AS 12.55.-125. By its own express terms, AS 12.55.-155(e) serves only to preclude the use of aggravating factors to enhance presumptive sentences in cases where the factors are necessary elements of the offense for which sentence is to be imposed.

*Id.* at 4–5. We reach the same result in Bell's case. Bell had previously been convicted of a felony for promoting prostitution. He has now been convicted of his second felony for escape. We conclude that Judge Ripley did not err in sentencing Bell to a presumptive sentence as a second felony offender.

■ Bell next argues that Judge Ripley erred in using his prior convictions for promoting prostitution to impose a presumptive sentence on the escape conviction, because his prior convictions were still on appeal at the time he was sentenced on the escape charge. We have rejected Bell's argument in *Wright v. State,* 656 P.2d 1226 (Alaska App.1983).

Bell next argues that Judge Ripley erred in rejecting two mitigating factors that Bell attempted to prove to reduce his presumptive sentence. Discussion of this issue requires us to set out Bell's version of his reasons for his escape. According to Bell, he left the Palmer Correctional Center because he was under extreme pressure from a family situation. Bell is the father of five children. At the time of this incident the ages of the children ranged from two to nine years old. Before he was imprisoned, Bell lived with the children's mother, Alice Anderson, for six years, and they had been going together for eleven years. According to Bell, Ms. Anderson told him she was ill with pneumonia. Bell was able to obtain a pass from the Palmer Correctional Center for eight hours for August 28, 1981. Bell was to use this pass to attend to Ms. Anderson and his children. He called his home on August 27 to tell his family he would be able to visit on the pass. He talked to his daughter, Melika, who was seven years old. Melika told Bell that the family had packed up their belongings and were leaving Anchorage that night. One-half hour later Bell reached Ms. Anderson. She told him the family was leaving but refused to tell him where they were going, and hung up the telephone on him. According to Bell, he became very distraught and walked away from the correctional facility at about 9:00 p.m. on August 27. He went to his home in Anchorage, but his family had apparently left. According to Bell, he made several calls in an unsuccessful attempt to locate his family. He then attempted to return to the Palmer jail. A correctional officer, Robert Cozad, saw Bell on the highway about eighteen miles from the Palmer facility. Bell first appeared to signal Cozad to stop, but as Cozad slowed down, Bell ran into the woods. Cozad radioed the state troopers and Palmer police and told them that he had located Bell. Officer John Chapman arrived in the area and had a police dog search a wooded area where Cozad had seen a man running. A few minutes later Chapman saw Bell running out of the wooded area with the dog in pursuit. Bell was apprehended and taken into custody. According to Bell, he had not been able to locate his family and had no idea where they were as of the time he was sentenced on this charge in February of 1982.

■ Bell argued that his sentence should be reduced because of the presence of two mitigating factors. Bell first argues that Judge Ripley erred in not finding the presence of the mitigating factor that "the conduct constituting the offense was among the least serious conduct included in the definition of the offense." AS 12.55.-155(d)(9). Bell argues that his offense was among the least serious constituting escape because he walked away from the correc-

tional facility and injured no one; he did not plan the offense because it arose from a sudden family emergency; and he was planning to return to the facility. Judge Ripley rejected this mitigating factor. Judge Ripley concluded that the evidence showed that Bell was not attempting to return to the Palmer facility at the time he was captured and that he had in fact attempted to evade capture. Judge Ripley also pointed out that although Bell did not harm anyone or do any property damage while escaping, his escape was a standard one for the minimum custody Palmer facility. We conclude that Judge Ripley's findings as to the nature of Bell's escape were not clearly erroneous and conclude that Judge Ripley did not err in rejecting this mitigating factor.

Bell next argues that Judge Ripley erred in not finding that his offense was mitigated because he "committed the offense under some degree of duress, coercion, threat, or compulsion insufficient to constitute a complete defense, but which significantly affected his conduct." AS 12.55.155(d)(3). Bell argued that his family difficulties established the existence of this mitigating factor. Judge Ripley ruled that Bell had not established this mitigating factor as a matter of law. Judge Ripley stated that he believed Bell, at least in part, when he stated that his escape was caused by worries about his family. Judge Ripley reasoned that otherwise it made no sense for Bell to escape a few hours before he was about to be released on a pass. However, he concluded that duress required proof that a defendant committed a criminal act because he feared that an illegal action would be taken against him or a third person. Judge Ripley used the example of a person who commits a criminal act to avoid being shot by another person. Judge Ripley ruled that Bell's personal difficulties with his family, even if true, would not establish the mitigating factor.

The state argues that to interpret the meaning of "duress" in AS 12.55.155(d)(3) we should turn to AS 11.81.440(a), which establishes the defense of duress under the criminal code. That section reads:

*Duress.* (a) In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because he was coerced to do so by the use of unlawful force upon him or a third person, which force a reasonable person in his situation would have been unable to resist.

The state concludes that "duress as a mitigating factor applies only under circumstances where a crime is committed under some lesser degree of actual or threatened force against the defendant or a third person not amounting to a total defense."

■ We disagree with the state's analysis. The language of AS 12.55.155(d)(3) speaks not only of "duress" but of "duress, coercion, threat, or compulsion insufficient to constitute a complete defense. . . ." It appears the legislature intended the mitigating factor to be interpreted more broadly than the defense of duress. The defense of duress and the related defense of necessity have been narrowly defined at common law to excuse criminal behavior only in very limited circumstances. *See Cleveland v. Municipality of Anchorage,* 631 P.2d 1073, 1077–82 (Alaska 1981); *Nelson v. State,* 597 P.2d 977, 978–80 (Alaska 1979). However, when a person who is accused of a crime can establish that he acted under duress or necessity, his conduct is completely excused. W. LaFave & A. Scott, *Criminal Law* § 49, at 374 (1972). When a person who is accused of a crime establishes that he acted under "duress, coercion, threat, or compulsion" to establish the mitigating factor, he merely has established a fact which gives the court the power to reduce his sentence. *See id.* at 379. This suggests that the legislature intended for the mitigating factor to be interpreted more broadly than the defense.

■ The revised code recognizes that criminal conduct is often justified where prompted by a good faith and reasonable belief that the criminal conduct is necessary to avoid some greater evil. *Nygren v. State,* 616 P.2d 20, 22 (Alaska 1980) (self-defense); *Nelson v. State,* 597 P.2d at 979–80

(necessity); AS 11.81.300–.450 (*see especially* AS 11.81.320 (necessity); AS 11.81.-330–.350 (defense of self, others and property); AS 11.81.440 (duress)). In addition, the code recognizes a partial defense to murder where the defendant acts in the heat of passion. Consistently, the code requires the defendant's reaction to the provocation to be reasonable. *LaLonde v. State,* 614 P.2d 808 (Alaska 1980). All of these defenses can be called "perfect" since, if established, they are complete defenses to the crime originally charged.[4] The code does not recognize so-called "imperfect defenses" that involve good faith but unreasonable beliefs that criminal conduct is necessary to avoid a greater evil. *See Houston v. State,* 602 P.2d 784, 796 (Alaska 1979) (self-defense); *Weston v. State,* 656 P.2d 1186 (Alaska App.1982) (distinguishing perfect from imperfect defenses).

■ AS 12.55.155(d)(3) provides an alleviation of the code's treatment of imperfect defenses. Evidence the defendant in good faith subjectively believed facts which if true would have established one of the defenses justifying his conduct under the revised code, but which the judge or jury concludes would have been unreasonable under the circumstances, may warrant mitigation of a presumptive sentence. The closer the defendant's belief regarding the facts justifying his conduct comes to approximating the belief a reasonable person similarly situated would have had, the more significant the mitigating factor becomes.

■ In *Juneby v. State,* 641 P.2d 823, 833, 835 (Alaska App.1982), we recognized that establishment of an aggravating or mitigating factor by clear and convincing evidence was only the first step in a two-part test that the court had to complete if it was to aggravate or mitigate a sentence. In addition, the court must evaluate the factor established in light of the whole record to determine whether the defendant's conduct as mitigated or aggravated deviat-

ed sufficiently from the typical conduct establishing the elements of the offense to warrant deviation from the presumptive sentence. In the absence of a finding of significant deviation from the conduct normally to be expected, we cautioned against substantial aggravation and (by implication) mitigation of the presumptive sentence. *Id.* at 839.

■ Applying this test to Bell's case, we conclude that the trial court erred in rejecting Bell's defense as a matter of law. Bell testified that he needed a temporary release from prison because the woman who was caring for his children was ill and perhaps in need of hospitalization. The state thought enough of Bell's concern to give him an eight-hour pass. Bell learned that his family was scheduled to leave Anchorage without giving him information regarding their whereabouts. He allegedly panicked and left the institution only a few hours before his pass was scheduled to commence. Under these circumstances, a trial judge could find that balancing Bell's criminal conduct—anticipating his pass by a few hours—against the harm he subjectively believed would occur—permanent separation from his children—met the test of an "imperfect" defense. Of course, the court could reject Bell's defense if it did not believe him.

From Judge Ripley's remarks we are unable to tell to what extent he believed Bell's version of the escape. We therefore remand this case to permit Judge Ripley to determine whether Bell acted under "duress, coercion, threat, or compulsion." Should Judge Ripley find in Bell's favor on this point, he should then determine the extent to which Bell's presumptive sentence should be reduced, if at all, in light of this mitigating factor.

The case is REMANDED for resentencing.

---

4. Heat of passion, if established, results in conviction of manslaughter, a lesser included offense. *See LaLonde v. State,* 614 P.2d at 810.