Don G. MULLER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9934.

Court of Appeals of Alaska.

Nov. 21, 2008.

James W. McGowan, Sitka, for the Appellant.

Blair M. Christensen, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

COATS, Chief Judge.

Don G. Muller was convicted of criminal trespass after he entered United States Senator Ted Stevens's office to protest the war in Iraq and then refused to leave when it was

time for the office to close for the day. Muller argues that his conviction should be reversed because the district court wrongly instructed the jury on the necessity defense. We conclude that Muller was not entitled to a necessity defense and therefore affirm his conviction.

### Facts and proceedings

On February 20, 2007, at about 1:10 p.m., Muller and eight or nine other protestors arrived at Senator Stevens's Fairbanks office to protest the war in Iraq. Senator Stevens was not there at the time. Muller told Diane Hutchison, who ran the Fairbanks office for Stevens, that the protestors planned to read a list of 6000 names of civilians killed in the Iraq war. Another protester said he had an additional 3200 names of American soldiers who had been killed. The protestors proceeded to read the names. At 4:00 p.m., the office's normal closing time, the protestors still had about 8500 names to read. Hutchison asked the protestors to come back the following morning. One of the protestors then said: "[It] wouldn't be civil disobedience if we left when you asked, would it?" A security guard then asked the protestors to leave. When they refused, the guard called the police, and the police arrived at about 4:15 p.m. Three of the protesters, including Muller, were arrested. Muller was charged with the misdemeanor offense of second-degree criminal trespass.[1]

Muller appeared *pro se*. Before trial, he gave notice that he intended to raise the defense of necessity, and he proposed the pattern jury instruction on the necessity defense. He also sought admission of thirteen articles he claimed showed that his protest was aimed at stopping an illegal war.

District Court Judge Jane F. Kauvar denied Muller's request to admit the articles on the war. She did, however, allow Muller to present a necessity defense, though she rejected the pattern jury instruction and substituted her own. Muller did not object to Judge Kauvar's substitute instruction.

In his testimony at trial, Muller admitted that he stayed in Senator Stevens's office after closing. He testified that he did so to stop a significant harm—what he believed was an illegal war in Iraq—and that he believed he had no adequate alternative to bring about an end to the war. He said he had pursued other activities, from education to films to non-violence training, and that none of these activities had ended the war. He also testified that he believed the Iraq war was an "infinitely greater harm" than staying past closing in a government office.

The jury rejected Muller's defense and convicted him of trespass. He appeals.

### Why we conclude Muller was not entitled to a necessity defense

To establish a necessity defense the defendant must show that: (1) the act charged was done to prevent a significant evil; (2) there was no adequate alternative; and (3) the harm caused was not disproportionate to the harm avoided.[2] The first two elements are established if the defendant shows that he reasonably believed at the time of acting that those elements were present, even if that belief was mistaken.[3] As to the third element, which involves balancing the harm caused against the harm sought to be avoided, the court must make "an objective determination ... as to whether the defendant's value judgment was correct, given the facts as [the defendant] reasonably perceived them."[4]

A defendant is not entitled to a jury instruction on the defense of necessity and is not entitled to argue that defense to the jury unless there is "some evidence" of necessity.[5]

---

1.  AS 11.46.330(a).

2.  *Cleveland v. Anchorage*, 631 P.2d 1073, 1078 (Alaska 1981).

3.  *Nelson v. State*, 597 P.2d 977, 979 (Alaska 1979); *Seibold v. State*, 959 P.2d 780, 782 (Alaska App.1998).

4.  *Seibold*, 959 P.2d at 782 (quoting *Bird v. Anchorage*, 787 P.2d 119, 120–21 (Alaska App. 1990)).

5.  *Lacey v. State*, 54 P.3d 304, 306, 308 (Alaska App.2002); *see also* AS 11.81.900(b)(2)(A) (governing affirmative defenses) and AS 11.81.900(b)(19)(A) (governing normal defenses).

"In this context, 'some evidence' is a term of art; it means evidence which, if viewed in the light most favorable to the defendant, is sufficient to allow a reasonable juror to find in the defendant's favor on each element of the defense."[6]

■ Muller argues that Judge Kauvar's instruction on the necessity defense was flawed because it did not inform the jury that the first two elements of the defense—that the criminal trespass was done to prevent a significant evil and that there were no adequate alternatives to bring about an end to the war in Iraq—were proved as long as he *reasonably believed* those elements were present, even if his belief was mistaken.

Muller is right that the jury was not properly instructed on the mental state he had to prove to establish the first two elements of the necessity defense. The record suggests that Judge Kauvar intended to instruct the jury in line with our decision in *Bird v. Anchorage*,[7] which clearly states that the first two elements of the defense only require proof that the defendant reasonably believed those elements were present.[8] But this language was not in the instruction read and submitted to the jury. Muller argued to the jury that he held these beliefs and that his beliefs were reasonable. But given the erroneous instruction, the jurors may not have understood that Muller's reasonable beliefs were enough to satisfy the first two elements of the defense.

Even so, Muller never objected to Judge Kauvar's instruction, so he cannot prevail on appeal unless he shows he was substantially prejudiced by the court's error.[9] We conclude that Muller cannot show substantial prejudice because, as a matter of law, he was not entitled to raise the defense of necessity in the circumstances of his case.

The Alaska Supreme Court addressed a similar situation in *Cleveland v. Anchorage*.[10] In *Cleveland*, anti-abortion protestors sought to raise a necessity defense after they were charged with criminal trespass for disrupting the operations of an abortion clinic by blocking the doorways and refusing to leave.[11] The supreme court found that the necessity defense was unavailable in this circumstance for several reasons. First, the defense cannot be raised if the human harm sought to be avoided is a legal act, and abortion is lawful in Alaska.[12] Second, a protest aimed at political change does not generally present the type of emergency situation that entitles a defendant to a necessity defense.[13]

In reaching this latter conclusion, the supreme court adopted the reasoning of the Hawaii Supreme Court in *State v. Marley*.[14] In *Marley*, the defendants were charged with criminal trespass for entering the offices of Honeywell Corporation in an effort to stop what they believed were "war crimes" being committed by Honeywell.[15] The protest was non-violent, but it disrupted normal business operations.[16] The supreme court found that two of the Hawaii Supreme Court's grounds for rejecting the necessity defense in *Marley* were applicable in *Cleveland*: (1) the defendants had other forms of non-criminal protest available "to enable them to dramatize, and hence hopefully terminate, conduct which they may view [as] harmful," and (2) the defendants' actions " 'were not reasonably designed to actually prevent the threatened greater harm ... Under any possible set of hypotheses, defendants could foresee that their actions would fail to halt' the practices to which they objected."[17]

---

6.  *Lacey,* 54 P.3d at 308.

7.  787 P.2d 119.

8.  *Id.* at 121.

9.  *See* Alaska R.Crim. P. 47(b); *Bidwell v. State,* 656 P.2d 592, 594 (Alaska App.1983).

10.  631 P.2d 1073.

11.  *Id.* at 1075, 1078.

12.  *Id.* at 1078–79.

13.  *Id.* at 1079–80.

14.  54 Haw. 450, 509 P.2d 1095 (1973).

15.  *Id.,* cited in *Cleveland,* 631 P.2d at 1079.

16.  *Id.* at 1099, cited in *Cleveland,* 631 P.2d at 1079.

17.  *Cleveland,* 631 P.2d at 1079 (quoting *Marley,* 509 P.2d at 1109).

In *Cleveland,* the defendants attempted to distinguish *Marley,* arguing that the alleged harm in *Marley*—the manufacture of weapons for use in the Vietnam war—"was spacially and temporally remote from the site of the trespass," while their protest halted abortions "scheduled in the very rooms [they] blocked, within minutes of the time of their entry." [18] The supreme court found that this distinction was not determinative:

In both cases, it was obvious to the trespassers that their actions could not halt the alleged greater harm to which society had given its imprimatur, but rather that, at best, the harm could be only postponed for a brief interval, following which society's normal operations would reassert themselves. This was simply not the kind of emergency situation contemplated by the defense of necessity.

Further, in spite of appellants' protestations to the contrary, their acts, like the acts of the *Marley* defendants, are much more appropriately characterized as protesting with the intent to "dramatize, and hence hopefully terminate, conduct which they may view [as] harmful," [than], as appellants' describe their own behavior, "directly intervening to avert an imminent threat to human life." Appellants' protest was, in fact, part of a nationwide protest that resulted in several similar arrests in other cities. Appellants appear to concede that if their actions are best described as a protest, the necessity defense would be unavailable. We think it manifest that it would be inappropriate to characterize these trespasses as anything other than a protest, and that appellants' argument of necessity must therefore be rejected.[19]

This reasoning is even more applicable in the circumstances of this case. Although Muller testified that he believed the only adequate alternative to halting the Iraq war was staying in Senator Stevens's office after closing—because he had already tried other types of protest and they had failed—he offered no evidence that coming back at 8:00 a.m. the following morning to finish reading the names of Iraq war casualties would have been any less effective. Moreover, Muller offered no evidence that, "[u]nder any possible set of hypotheses," his actions had any realistic hope of ending the war in Iraq.[20] And, unlike the protestors in *Cleveland,* Muller has not asserted, much less shown, that his acts were anything other than a symbolic protest intended to "dramatize, and hence hopefully terminate" conduct he viewed as harmful.[21] Thus, Muller had no right to a necessity defense: he offered no evidence that he reasonably believed his protest could prevent a significant evil or that he reasonably believed there were no adequate alternatives to criminal trespass to achieve his goal.

Because Muller offered no evidence that his actions had any realistic hope of ending the war in Iraq, the harm caused by disrupting normal operations in Stevens's office, objectively viewed, was disproportionate to the harm Muller could realistically hope to avoid by his trespass.[22]

And lastly, because Muller as a matter of law was not entitled to raise a necessity defense, the court did not abuse its discretion by refusing to admit the articles he argued would show he reasonably believed the war in Iraq was a "significant harm." Even if Muller reasonably believed the war in Iraq was illegal and morally wrong, he offered no evidence that his protest had any realistic hope of ending the war, or that it would be any less effective if it was completed during normal business hours.

*Conclusion*

Muller's conviction is AFFIRMED.

---

18. *Id.* at 1079.

19. *Id.* at 1080 (quoting *Marley,* 509 P.2d at 1109).

20. *See id.* at 1079 (quoting *Marley,* 509 P.2d at 1109).

21. *See id.*

22. *See Nelson,* 597 P.2d at 979–80.