**Jennifer GREENWOOD, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. S–13449.**

Supreme Court of Alaska.

Aug. 20, 2010.

Margi Mock, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Petitioner.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for Respondent.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

In August 2006 Jennifer Greenwood fled from her home in North Pole in the middle of the night, believing that she was about to be attacked by her former boyfriend and that he was planning to burn down his parents' nearby home. After screaming for help and calling 911, Greenwood got into her van and drove away. Greenwood drove less than a mile to her ex-boyfriend's parents' home and honked to try to wake them. She then drove a few blocks to the nearest well-lighted area along the highway, where she stopped to wait for the troopers who were responding to her 911 call, flagging them down when they arrived.

Greenwood had been drinking, and she was arrested and charged with felony driving under the influence. After hearing evidence and testimony about these incidents, the trial court denied Greenwood a jury instruction on the necessity defense, concluding that Greenwood was justified only in driving as far as her ex-boyfriend's parents' home. A jury convicted Greenwood, and the court of appeals affirmed, reasoning that Greenwood had presented no evidence that the danger continued after she reached the parents' home and that she had the alternative of remaining in her van with the doors locked. Because we conclude that Greenwood presented some evidence of each of the elements of the necessity defense, we reverse and remand for a new trial with a necessity instruction.

## II. FACTS AND PROCEEDINGS

On August 10, 2006, Jennifer Greenwood was home alone in her camper in North Pole waiting for Jay Way to arrive. Greenwood wanted to speak with Way, whom she had dated that summer, about her missing puppy that she suspected he may have taken. Because Greenwood's camper did not have electricity, she started a bonfire outside and lit some candles both inside and outside of the camper. As it grew late, Greenwood assumed that Way was not coming, and she let the fire burn down and began preparing for bed.

But Way did arrive on his four wheeler, and he and Greenwood had a couple of glasses of wine. Greenwood testified that when she brought up the subject of the missing puppy, Way seemed "kind of [ ] mad," which made her feel vulnerable and afraid. Greenwood testified that she had been told that Way had been physically abusive with his previous girlfriend and had drug problems, and she decided that the best way to avoid conflict in the situation would be to agree to have sex with Way.

Afterwards, Greenwood went outside to check on the fire. While she was outside, she overheard Way "mumbling" inside the camper about how he was going to burn down both Greenwood's camper and his parents' home and how he would not go back to jail because "there won't be any witnesses." Greenwood then observed Way flinging the lit candles around her camper, so she began screaming for her neighbors to help her or call 911. When no one came to her aid, Greenwood ran into the woods barefoot with her other dog. She testified that she could hear Way thrashing around and throwing things, presumably in his search for her.

Greenwood's dog got away from her, ran towards Way, and began to bark. Way picked up a two-by-four board and swung it at the dog. While Way was distracted, Greenwood sneaked into the camper to grab her purse containing her cell phone and quietly headed back into the woods. Greenwood called her dog back to her and dialed 911 to request help. After she explained that Way was trying to burn down her house, the dispatch operator wanted her to stay on the line, but the dog got away again and started barking at Way, so Greenwood hung up. Way then hit Greenwood's dog with the two-by-four and began "to ride all around" on his four wheeler.

At that point, Greenwood ran to her van with her dog. She testified that she felt that she needed to get out of the situation and to drive to Way's parents' house to warn them of the danger because she did not have their telephone number. Greenwood decided to drive on the back road to reach Way's par-

ents' house, less than a mile away, in order to avoid the fast traffic on the main road and to avoid crossing paths with Way. When Greenwood arrived at Way's parents' home, she saw that all of the lights were off, so she slowed down and honked her horn to try to rouse them. She did not stop because she was afraid of running into Way, who lived with his parents, and because there were no lights on at the house. Greenwood then drove a "couple of blocks" to the nearest well-lighted spot on the main road, Holmes Road. She parked to wait for the troopers who would be responding to her 911 call, and when she saw them, she flagged them down by honking her horn and opening her door.

When the troopers arrived sometime after 2:00 a.m., they found Greenwood distraught and crying on the side of the road. While interacting with Greenwood, the troopers smelled alcohol and observed that she was exhibiting signs of intoxication. Greenwood submitted to a portable breath test and was arrested for driving under the influence. A Datamaster test later showed Greenwood's blood alcohol concentration to be 0.134 percent.

Greenwood was charged with felony driving under the influence in violation of AS 28.35.030(n) on August 16, 2006. The case was assigned to Superior Court Judge Randy M. Olsen for trial. Before trial began, the State moved for a protective order that would prevent Greenwood from raising the affirmative defense of necessity. The trial court did not rule on this matter immediately, but instead elected to hear the evidence before making a decision. After the State presented its case, Greenwood made an offer of proof to the court on what her expected evidence of the defense would be. The court allowed her to present this evidence despite the State's argument that Greenwood had reasonable alternatives available to her.

After hearing Greenwood's testimony, the superior court stated that Greenwood had "at least created a jury question" as to whether or not Greenwood had an adequate alternative method of warning Way's parents of the

evil she was seeking to prevent. The trial court ruled as a matter of law, however, that upon Greenwood's arrival at Way's parents' house, the necessity ended: "[O]nce she got to the parents' house, she would have accomplished everything that she wanted to accomplish. It would've been warning the parents. It would've been finding a safe haven. It was a house that she knew. At that point, she was not justified in driving further." The court explained that "if there's a continuing offense, like drunk driving, the illegal conduct must be stopped as soon as the necessity ends," and it refused to instruct the jury on the necessity defense.

Greenwood immediately moved for reconsideration and a mistrial, arguing that "it would be extremely prejudicial" for her testimony to be stricken. The trial court denied both of the motions but did not strike Greenwood's testimony. Greenwood was convicted and sentenced to 24 months in prison with 20 months suspended.

Greenwood appealed her conviction to the court of appeals, arguing that she was entitled to a necessity instruction under the circumstances.[1] The court of appeals affirmed the trial court's ruling, reasoning that Greenwood's failure to remain at Way's parents' house because she did not wish to encounter Way undermined her argument that it was necessary for her to drive to their house to warn them of Way's intentions, making an encounter with Way "seemingly ... inevitable."[2] The court of appeals further pointed out that Greenwood did not offer any evidence that Way ever arrived at his parents' house or that "she would have been in danger had she simply stayed in her car, with the doors locked, and continued honking her horn until she roused Way's parents."[3]

Chief Judge Coats dissented from the memorandum opinion, maintaining that Greenwood had "presented 'some evidence' to justify her decision to drive to the main road to contact the state troopers" because her testimony demonstrated that she was concerned about an encounter with Way and

1. *Greenwood v. State*, Mem. Op. & J. No. 5438, 2009 WL 250348 (Alaska App., Feb.4, 2009).

2. *Id.* at *2–*3.

3. *Id.* at *3.

that she wanted to ensure that the troopers were able to find both her and the Way residence.[4] In the dissent's view, "a jury could reasonably find that Greenwood's decision to avoid a confrontation with Way was justifiable."[5] Moreover, the dissent noted that Greenwood had "asserted the basis for her defense before she was arrested."[6]

We granted Greenwood's petition for hearing on the question of whether she was entitled to a necessity instruction at trial.

### III. STANDARD OF REVIEW

■ "A defendant is entitled to a jury instruction on the necessity defense if [she] presents 'some evidence' in support of that defense."[7] We review whether a defendant has presented some evidence of a proposed defense de novo after considering the entire record[8] and viewing the evidence in the light most favorable to the defendant.[9]

### IV. DISCUSSION

■ "The common law defense of necessity is available to criminal defendants in Alaska except where preempted or excluded by the legislature."[10] To receive the benefit of a necessity defense, the defendant must show the existence of three essential elements: "1) [t]he act charged must have been done to prevent a significant evil; 2) there must have been no adequate alternative; 3)

the harm caused must not have been disproportionate to the harm avoided."[11] When the defendant is accused of a continuing offense, such as drunk driving, she "must also show some evidence that [ ]4) she stopped violating the law as soon as the necessity ended."[12] In order to receive the benefit of this defense, the accused must have "reasonably believed at the time of acting that the first, second, and … fourth elements were present."[13] The defendant's value judgment concerning the third element, whether the "reasonably foreseeable harm resulting from the violation would be less than the harm resulting from compliance with the law," is evaluated objectively using the facts as the defendant reasonably perceived them.[14]

■ If a defendant presents "some evidence" of each of these elements, the defendant is entitled to a jury instruction on the necessity defense.[15] " 'Some evidence' is evidence that, viewed in the light most favorable to the defendant, would allow a reasonable juror to find in the defendant's favor on each element of the defense."[16] The "some evidence" burden is not a heavy one—as long as the defendant produces some evidence to support each element of the defense, "any weakness or implausibility in that evidence is irrelevant"[17] and "a matter for the jury, not for the court."[18] As the court of appeals

4. *Id.* at *4 (Coats, C.J., dissenting).

5. *Id.*

6. *Id.*

7. *State v. Garrison,* 171 P.3d 91, 94 (Alaska 2007) (footnote omitted).

8. *Id.*

9. *McGee v. State,* 162 P.3d 1251, 1261 (Alaska 2007).

10. *Bird v. Municipality of Anchorage,* 787 P.2d 119, 120 (Alaska App.1990); *see also* AS 11.81.320 (adopting necessity as a justification to the extent permitted at common law and classifying it as an affirmative defense).

11. *Cleveland v. Municipality of Anchorage,* 631 P.2d 1073, 1078 (Alaska 1981) (quoting *Nelson v. State,* 597 P.2d 977, 979 (Alaska 1979)).

12. *Garrison,* 171 P.3d at 94 (citing *Allen v. State,* 123 P.3d 1106, 1108 (Alaska App.2005); *Reeve v.*

*State,* 764 P.2d 324, 326 (Alaska App.1988); *Gerlach v. State,* 699 P.2d 358, 362 (Alaska App. 1985); *Wells v. State,* 687 P.2d 346, 350 (Alaska App.1984)).

13. *Garrison,* 171 P.3d at 94.

14. *Nelson,* 597 P.2d at 980 n. 6; *see also Garrison,* 171 P.3d at 94; *Cleveland,* 631 P.2d at 1078.

15. *Garrison,* 171 P.3d at 94; *McGee v. State,* 162 P.3d 1251, 1261 (Alaska 2007).

16. *McGee,* 162 P.3d at 1261.

17. *Garrison,* 171 P.3d at 95 (internal quotation marks omitted).

18. *Seibold v. State,* 959 P.2d 780, 783 (Alaska App.1998) (quoting *Willett v. State,* 836 P.2d 955, 958 (Alaska App.1992)).

noted, "a strong argument can be made that a trial judge should err on the side of giving instructions" on a proposed defense in order to prevent the jury from considering "its own understanding of what [the proposed] defense is in the absence of an instruction from the court." [19]

Greenwood argues that she presented some evidence of each element of the necessity defense and that she was therefore entitled to a jury instruction. The State counters that Greenwood failed to present evidence "from which a juror could conclude that her stated belief in the need to continue driving after reaching the Way home was reasonable." We consider de novo whether Greenwood has presented some evidence of each of the elements of the necessity defense.[20]

### A. Greenwood Presented Some Evidence That She Drove Under The Influence To Prevent A Significant Evil.

■ Both the trial court and the court of appeals accepted Greenwood's contention that she needed to drive away from her camper on the night in question to prevent a significant evil.[21] But both courts seemed to define the significant evil to be prevented narrowly: "impending arson" perpetrated against Way's parents.[22] Greenwood argues a broader theory of the threat she was seeking to avoid, that "she was terrified for her safety and the safety of Way's parents."

Greenwood testified that she overheard Way say that he was planning on burning down his parents' home and would leave no witnesses and that she saw him take aggressive actions, such as throwing lit candles inside her camper and hitting her dog with a board. This testimony provides some evidence that Greenwood was seeking to prevent several evils: physical harm to herself, harm to Way's parents, and arson to her

home and Way's parents' home. These harms are significant and consistent with the requirement that "the harm sought to be avoided by a defendant raising the necessity defense must have emanated either from a natural cause or from illegal human acts." [23]

As Chief Judge Coats pointed out in his dissent, "[u]nlike most cases where defendants claim, after the fact, that their violation of the law was justified by necessity, Greenwood asserted the basis for her defense before she was arrested." [24] Greenwood's fear apparently motivated her to call the police and then flag them down, despite the fact that it was obvious that she had broken the law by drinking and driving. This persuades us that she reasonably believed that her conduct was necessary at the time of acting. We conclude that Greenwood presented some evidence of the first element, that there were several significant harms that her actions were calculated to avoid.

### B. Greenwood Presented Some Evidence That There Were No Adequate Alternatives And That The Necessity Continued Until She Stopped Driving.

■ We next consider whether Greenwood presented some evidence of both the second element—that there were no adequate alternatives to the unlawful action—and the fourth element—that the legal violation stopped as soon as the necessity ended. There is some inherent factual overlap between the second element and the fourth element because an alternative that becomes available at a given point during a continuing violation can serve to end the necessity. Because we look to the reasonableness of Greenwood's beliefs at the time she acted in evaluating whether she has presented some evidence of both the second and fourth ele-

**19.** *Id.* at 782 (quoting *Folger v. State,* 648 P.2d 111, 114 n. 3 (Alaska App.1982)).

**20.** *Garrison,* 171 P.3d at 94.

**21.** *Greenwood v. State,* Mem. Op. & J. No. 5438, 2009 WL 250348, at *2 (Alaska App., Feb.4, 2009).

**22.** *Id.*

**23.** *Bird v. Municipality of Anchorage,* 787 P.2d 119, 122 (Alaska App.1990).

**24.** *Greenwood,* 2009 WL 250348, at *4 (Coats, C.J., dissenting).

ments, we will consider these elements together.[25]

The trial court agreed with Greenwood that she provided some evidence of a necessity that required her to drive away from her camper and to Way's parents' house, and the court of appeals did not disturb this ruling.[26] The court of appeals explained, "Greenwood presented no evidence to suggest that it was reasonable for her to believe (1) that this danger remained an immediate one [upon arriving at Way's parents' house] and (2) that she needed to continue driving to avert it." [27] The majority opinion reasoned that Greenwood's failure to stop at the Way residence because she did not want to encounter Way undercut her justification for driving there in the first place—warning Way's parents of his imminent arrival and intentions.[28]

The court of appeals also pointed to a potential alternative:

> In addition, Greenwood offered no evidence that she would have been in danger had she simply stayed in her car, with the doors locked, and continued honking her horn until she roused Way's parents. Greenwood may have subjectively believed that it would not be safe for her to follow this course of action—but ... a defendant's subjective beliefs are not sufficient, standing alone, to establish this prong of the necessity defense.[29]

As previously stated, in deciding whether a defendant has produced some evidence that no adequate alternative existed and that the violation of the law ceased once the necessity ended, courts consider the defendant's reasonable beliefs at the time, even if those beliefs are mistaken, rather than objectively weighing all potential alternatives.[30] The im-

plausibility of a defendant's story, or any weakness in the evidence supporting that story, is not a relevant consideration.[31] This standard is applied to both aspects of the second element—whether the defendant believed that alternatives existed and whether the defendant believed those alternatives were adequate—as well as to the fourth element. In applying the "some evidence" test in the related self-defense context, Alaska case law has emphasized that,

> because reasonableness is a factual question closely allied with considerations involving the credibility of witnesses and the weight to be given to their testimony, trial courts must avoid basing decisions as to the necessity of self-defense instructions on an evaluation of the reasonableness of defendants' conduct.... It is not the province of the judge to weigh the evidence and decide if a defendant's subjective belief was reasonable or unreasonable.[32]

It was therefore error for the court of appeals to conclude that Greenwood's subjective beliefs were not sufficient to satisfy the "some evidence" test for the second and fourth elements of the necessity defense.

This is not to say, however, that a court must always hold that the "some evidence" test has been met when a defendant asserts that her belief at the time was that there were no adequate alternatives. Instead, as the court of appeals explained in *Seibold v. State*, courts may refuse to instruct the jury on the necessity defense when the defendant had "clear legal alternatives to violating the law." [33] When a defendant testifies to her beliefs at the time of acting, the question for the judge is whether a "clear legal alternative" existed such that the defendant is un-

---

**25.** *See State v. Garrison,* 171 P.3d 91, 94 (Alaska 2007); *see also McGee v. State,* 162 P.3d 1251, 1261 & n. 50 (Alaska 2007); *Cleveland v. Municipality of Anchorage,* 631 P.2d 1073, 1078 (Alaska 1981).

**26.** *Greenwood,* 2009 WL 250348, at *2.

**27.** *Id.* at *3.

**28.** *Id.* at *2–*3.

**29.** *Id.* at *3.

**30.** *Garrison,* 171 P.3d at 94.

**31.** *Toomey v. State,* 581 P.2d 1124, 1126 n. 10 (Alaska 1978).

**32.** *Paul v. State,* 655 P.2d 772, 778 (Alaska App. 1982) (internal quotation marks omitted); *see also McGee v. State,* 162 P.3d 1251, 1262 n. 54 (Alaska 2007) (recognizing that the self-defense context is analogous to the necessity defense context).

**33.** 959 P.2d 780, 783 (Alaska App.1998).

able as a matter of law to meet her burden of presenting some evidence that she reasonably believed that there were no adequate alternatives to her unlawful action.

Both this court and the court of appeals have upheld rulings where the existence of clear legal alternatives prevented a defendant from receiving a jury instruction on the necessity defense. For example, in *Nelson v. State* we held that the defendant, who had unlawfully used two Highway Department vehicles to free his truck that was stuck in a marshy area, had failed to make out the case for the necessity defense because several people had stopped and offered to help him, thus providing lawful alternatives.[34] Similarly, in *Cleveland v. Municipality of Anchorage* we held that the defense of necessity was not available to defendants charged with trespassing at an abortion clinic in order to prevent abortions for several reasons, including that the defendants could have engaged in non-criminal forms of protest.[35] The court of appeals likewise affirmed the trial court's refusal to instruct the jury on the necessity defense in *Schnabel v. State* when the defendant failed to pursue the judicial and administrative remedies available to resolve his claimed necessity.[36] Finally, in *Gerlach v. State* the court of appeals concluded that a non-custodial mother who hid her daughter out of state for a year was not entitled to a necessity instruction based on her claim that the father was abusive because adequate remedies were available at law.[37]

We next turn to the question whether Greenwood fulfilled the requirement of some evidence for the second and fourth elements. The "some evidence" test does not require that the defendant testify or even offer direct evidence in his own behalf. Some evidence establishing a dispute as to a factual issue may arise from weakness in the prosecution's evidence or from impeachment of its witness. Similarly, circumstantial evidence presented as part of the state's case-in-chief may give rise to some evidence of a disputed fact.[38]

In this case, we consider whether Greenwood provided some evidence that she reasonably believed at the time of driving that she had no adequate alternatives and that the necessity continued until she stopped her vehicle. These questions must be evaluated in light of our previous conclusion that the harms Greenwood was seeking to prevent included the threat to her own safety.

Our decision in *McGee v. State* provides guidance on when a court should conclude that a defendant has provided some evidence of a subjective belief that there were no adequate alternatives available.[39] In *McGee*, the defendant presented evidence that his mother's boyfriend threatened that he would run over the defendant, McGee.[40] McGee maintained that he feared that the boyfriend would make good on this threat because of an earlier physical altercation, so McGee claimed to have smashed the windows of the boyfriend's pickup truck to make sure that the boyfriend could not see him to run him over.[41] We held that, although there were likely many other available options, McGee's testimony raised a question of fact concerning whether he reasonably failed to recognize those other options because of his agitated mental state.[42] Consistent with *McGee*, we also consider that the threat to Greenwood's safety was fresh and imminent, and we take into account the emotions that a person in her position could have experienced.

34.   597 P.2d 977, 980 (Alaska 1979).

35.   631 P.2d 1073, 1079 (Alaska 1981); *see also Bird v. Municipality of Anchorage*, 787 P.2d 119, 121–22 (Alaska App.1990).

36.   663 P.2d 960, 966 (Alaska App.1983).

37.   699 P.2d 358, 362 (Alaska App.1985).

38.   *Seibold v. State*, 959 P.2d 780, 782–83 (Alaska App.1998) (quoting *Willett v. State*, 836 P.2d 955, 958 (Alaska App.1992)).

39.   162 P.3d 1251 (Alaska 2007).

40.   *Id.* at 1252.

41.   *Id.*

42.   *Id.* at 1262 (considering the defendant's testimony about his shock and surprise as enough to raise a question of fact that he was unable to recognize other available options at the time that he took the unlawful action).

Greenwood's evidence, including her testimony that she first screamed for help and called 911 before deciding to drive away to escape a dangerous situation, demonstrates that she exhausted the most obvious of her alternatives before deciding to take the illegal action. She also offered testimony that she was unwilling to stop at the Way residence and risk a confrontation with her attacker because Way was on a four wheeler and she was unsure of his whereabouts when she approached the Way residence in her van. As Greenwood argued, she had reason to suspect that Way "was likely to return" to his parents' house because "Way also live[d] at that house." Greenwood's other actions, such as stopping of her own accord in a well-lighted area, where she waited for police until she flagged them down, are consistent with her understanding of the necessity—her need to escape from Way and to warn his parents of the potential harm by waking them.

The court of appeals concluded that Greenwood failed to present some evidence of the fourth element because Greenwood did not offer any evidence that it would have been dangerous for her to sit in her locked van outside of Way's parents' house while honking to wake the parents.[43] We disagree. To meet the "some evidence" test for the fourth element, Greenwood is not required to present evidence that every possible alternative was unavailable to her; instead she need only provide some evidence that she reasonably believed that the necessity continued until the point that she stopped violating the law, even if that belief was mistaken.[44] Furthermore, even if she was required to present evidence that she reasonably believed that this alternative was not available to her and that she believed the necessity continued because she could not stop and wait, Green-

wood's testimony that Way had access to a two-by-four that he had previously employed as a weapon against her dog provided a foundation for a reasonable belief that she was not safe waiting in a dark car, even with the doors locked.

We therefore conclude that Greenwood's testimony constituted some evidence sufficient to enable a reasonable juror to decide that Greenwood reasonably believed that she had no adequate alternatives to breaking the law by driving under the influence—even if that belief was mistaken—and that she stopped driving once she believed the necessity had ended.

### C. Greenwood Presented Some Evidence That The Reasonably Foreseeable Harm Resulting From Her Unlawful Action Would Be Less Than The Harm Resulting From Her Compliance With The Law.

The third element of proportionality requires that "[a]n objective determination ... be made as to whether the defendant's value judgment was correct, given the facts as [she] reasonably perceived them."[45] As discussed previously, the trial court and the court of appeals assumed that the only harm that Greenwood was seeking to avoid was "possible arson or a threat of arson," but we have concluded that the potential harm to Greenwood herself must also be considered. The harm that Greenwood identifies, including risk to her personal safety because of Way's threats and physical aggression, are significant.[46] Further, her testimony about the rumors that she had heard about Way's drug use and violent history are relevant because the "third element requires an objective comparison of the relative seriousness of the harms caused and avoided *when viewed*

**43.** *Greenwood v. State*, Mem. Op. & J. No. 5438, 2009 WL 250348, at *3 (Alaska App., Feb.4, 2009).

**44.** *State v. Garrison*, 171 P.3d 91, 94 (Alaska 2007).

**45.** *Id.* (quoting *Cleveland v. Municipality of Anchorage*, 631 P.2d 1073, 1078 (Alaska 1981)).

**46.** This case can easily be distinguished from *Garrison*, where Garrison failed to present any

"evidence that could permit a reasonable jury to find that any of the alleged harms she avoided outweighed the very real dangers she risked by driving drunk." *Id.* at 97. As discussed, Greenwood presented evidence that the harms she sought to avoid were significant and included physical injury, arson, and death and that she perceived these harms to be imminent, not speculative like those argued by Garrison.

*in light of the facts perceived by the defendant."* [47]

Our analysis and balancing process must also account for the serious risk that drunk driving poses to the public,[48] particularly because we consider the harm reasonably foreseeable from a defendant's actions, not the harm that actually occurred.[49] Greenwood had already exhausted available options such as screaming for help and calling the police, and she testified that she took concrete steps to mitigate the risk of driving under the influence by driving on a back road and reaching speeds of only 35 miles per hour. Although driving any distance under the influence poses a significant risk, Greenwood testified that she continued driving only "a couple of blocks" after reaching Way's parents' home until she reached a well-lighted home on the route that she assumed that the troopers would take in responding to her 911 call—a total drive of less than one mile from beginning to end.

Considering that the trial court and the court of appeals agreed that Greenwood was justified in driving the distance between her camper and the Way residence, the question presented is whether Greenwood's decision to continue driving those last few blocks was disproportionate to the harm she was seeking to prevent—potential physical harm to herself resulting from an altercation with Way. As Chief Judge Coats pointed out in his dissent, "[p]olice agencies often warn the public to seek police help rather than to directly intervene in potentially dangerous situations." [50] The rationale behind the necessity defense is one of public policy: "the law ought to promote the achievement of higher values at the expense of lesser values, and sometimes the greater good for society will be accomplished by violating the literal language of the criminal law." [51]

Because the threshold for the "some evidence" test only requires "more than a scintilla" of evidence with any doubt resolved in Greenwood's favor,[52] we conclude that Greenwood has offered some evidence of the third element. Viewing the totality of the situation from Greenwood's perspective and considering her testimony regarding her emotional distress, we cannot conclude that there was not some evidence presented that the serious risk that she posed by driving under the influence was disproportionate to the serious physical injury, significant property damage, and other harms she reasonably feared at the time.

## V.  CONCLUSION

Because we conclude that Greenwood has met the "some evidence" test with respect to all four elements required for an instruction on the necessity defense, we REVERSE her conviction and REMAND for a new trial at which an instruction on Greenwood's necessity defense be given.

---

**47.**  *McGee,* 162 P.3d at 1261 (emphasis added).

**48.**  *See Jansen v. State,* 764 P.2d 308, 311 (Alaska App.1988) ("A drunk driver presents a universal risk to the community at large. . . .").

**49.**  *Nelson v. State,* 597 P.2d 977, 979–80 (Alaska 1979).

**50.**  *Greenwood v. State,* Mem. Op. & J. No. 5438, 2009 WL 250348, at *4 (Alaska App., Feb.4, 2009) (Coats, C.J., dissenting).

**51.**  *Nelson,* 597 P.2d at 979.

**52.**  *State v. Garrison,* 171 P.3d 91, 97 (Alaska 2007).